ADAMS *v.* MANUFACTURERS' & BUILDERS' FIRE INS. CO.

*(Circuit Court, D. Rhode Island.   August 23, 1883.)*

1. INSURANCE—AUTHORITY OF AGENT.
    An agent to procure insurance is not, from that engagement alone, authorized to cancel the policy.
2. SAME—CONSTRUCTION OF POLICY.
    A policy of fire insurance contained provisions that " if any broker or other person than the insured had procured the policy, or any renewal thereof, or any indorsement thereon, he shall be deemed to be the agent of assured, and not of the company, in any transaction relating to the insurance;" and that " the insurance could be terminated at any time by request of the assured, or by the company, on giving notice to that effect."   *Held,* that a notice of cancellation given to the agent who had procured the insurance, and not communicated to the assured, was not sufficient, and that such agent was not authorized to receive notice of cancellation for the assured.
3. SAME—USAGE AMONG BROKERS—EVIDENCE.
    Evidence that it is customary for the agent who procures a policy of insurance on the one side, and the local agent who grants it, to receive notice of the cancellation of policies, and notify each other in regard thereto, is admissible, but such usage must be proved by the most clear and unequivocal evidence, and be brought home to the actual knowledge of the party who is to be bound by it.

At Law.

*C. B. Farnsworth,* for plaintiff.

*D. B. Potter* and *T. Swarts,* for defendants.

Before LOWELL and COLT, JJ.

LOWELL, J.   At the trial of this cause a verdict was ordered for the plaintiff, subject to the opinion of the court upon questions of law.

The defendants, a company incorporated in New York, insured $1,500 upon the plaintiff's mill, machinery, etc., situated at Attleborough, Massachusetts, by a policy dated and issued October 1, 1881, payable to certain mortgagees.   The plaintiff lives in Pawtucket, and the insurance was obtained by the insurance agents, Starkweather and Shepley, doing business at Providence, of E. S. Babbitt, of the same place, local agent of the defendants, and was forwarded to the plaintiff.   October 7, 1881, the defendants' general agent wrote from New York to Mr. Babbitt to cancel the policy, in virtue of the stipulation cited below, and he gave notice of cancellation to Starkweather and Shepley, who failed to notify the plaintiff, and a few days later the mill was destroyed by fire.   The question is whether the notice of cancellation was sufficient.

An agent to procure insurance is not, from that engagement alone, authorized to cancel the policy, (*Latoix* v. *Germania Ins. Co.* 27 La. Ann. 113; *Rothschild* v. *American Cent. Ins. Co.* 74 Mo. 41;) and it was admitted at the hearing that he is not, by law, independently of stipulation or usage, an agent for any other purpose than that for which he was employed.   The defendants contend that such a power was given in the policy itself, in the following paragraphs:

"5. Relative to Issue and Cancellation of Policy:

"(1) If any broker or other person than the assured have procured this policy, or any renewel thereof, or any indorsement thereon, he shall be deemed to be the AGENT OF THE ASSURED, and not of this company, in any transaction relating to the insurance.

"(2) This insurance may be terminated at any time by request of the assured, or by the company, on giving notice to that effect. On surrender of the policy, the company shall refund any premium that may have been paid, reserving the usual short rates in the first case, and *pro rata* rates in the other case."

The defendants construe the provision of the policy first above quoted to mean that the agent who procures the policy shall be an agent to cancel it, or to receive notice of cancellation. But its meaning and purpose are plain. It was inserted for the purpose of meeting certain well-known decisions of the courts, among them the supreme court of the United States, holding the companies responsible for the mistakes of their agents in making up applications or doing other work for the assured; and its meaning is that in any transaction in procuring the insurance, or any renewal or indorsement, the person who acts for the assured shall be his agent, and not the agent of the company, although he may be in other matters their agent, general or special, or even one of their principal officers. The only possible ambiguity is in the words "any transaction," which might, under some circumstances, be broad enough to cover the defendants' position; but in this instance they are intended to make it clear that whether the dispute may concern a representation, a warranty, an application, an indorsement, or any other transaction, the person who acted for the assured shall be considered his agent, which is emphasized by large type, and shall not bind the company by any acts, omissions, or mistakes. This is its whole purpose and effect.

To hold that because of the words "any transaction," the assured has stipulated for an irrevocable agency for all purposes in any one who acted for him in procuring the policy, or any renewal thereof, or indorsement thereon, would be unreasonable, for there is no occasion for such an agency, except in the exigencies of this case; and it would be even absurd, for it might make three or four such agents, if so many persons had acted in the several matters referred to. That underwriters have so understood similar stipulations was asserted in argument; but we take leave to doubt it, as it supposes them unable to understand the meaning of a plain sentence of their own devising.

In the construction of written instruments containing no technical terms, authorities are of but little value. Each writing differs somewhat from every other, and if a judge cannot understand the one which he has before him, it is of little use to tell him how another judge has understood one that is more or less like it. So far as authority goes, however, it favors the construction which we adopt. The supreme courts of Massachusetts and Pennsylvania have so construed sim-

ilar stipulations, in *White* v. *Connecticut Fire Ins. Co.* 120 Mass. 330, and *First Nat. F. Ins. Co.* v. *Isett,* 14 Reporter, 378. The defendants cite *Grace* v. *American Cent. Ins. Co.* 16 Blatchf. 433; but in that case the collocation of the single paragraph concerning agency and cancellation was such as seemed to Judge BENEDICT to establish an intended connection between them. The defendants here argue that the collocation is of no importance; but as the judgment turned very largely upon that circumstance, this argument is a criticism upon the judgment itself, rather than a reason for applying it to a policy which is differently constructed.

As proof of a general agency the defendants offered to show that on one occasion a policy issued to the plaintiff by another company, through the agency of Mr. Babbitt, had been cancelled by notice to Messrs. Starkweather and Shepley; under what circumstances we do not know, as the judge rejected the evidence. An instance of this sort would be some slight evidence of agency, but the defendants afterwards called the plaintiff as a witness, and he denied that Starkweather and Shepley were his agents to receive notice. He was not testifying to a mere conclusion, for he told precisely what their employment was; namely, to obtain insurance for him, and nothing more. In the face of this uncontradicted and unimpeachable testimony, the jury would not have been warranted in finding that Starkweather and Shepley were authorized by the plaintiff to receive notice of cancellation, and so the exclusion of the evidence was immaterial for the purpose for which it was offered.

The defendants offered to prove a usage among insurance agents in Providence to notify each other of the cancellation of policies; that is, that the insurance agent who procured the policy on the one side, and the local agent who granted it on the other, were authorized by usage to receive such notices. Evidence of a similar usage was received by Judge BENEDICT in *Grace's Case,* 16 Blatchf. 433, to assist in the construction of the policy; and, for that purpose, it is before us on this motion. But it does not change our opinion of the meaning of the stipulation heretofore considered, because the usage extends only to insurance agents procuring a policy, and the stipulation refers to any person, whether an insurance agent or not, who shall have acted for the assured in any matter whatsoever.

Whether the evidence should have been received to add to the contract of the parties, is the difficult question of this case. In *Grace's Case,* Judge BENEDICT found that the usage was proved; but held that the stipulation for cancelling the policy by notice could not be varied by it even to the extent of allowing the assured a reasonable time in which to procure other insurance; and said, though he had no occasion to decide, that the usage could add nothing to the powers of the agent. The ruling in this case conformed to that *dictum.*

After an examination of the authorities we hold that a usage of this sort might be binding on the plaintiff if proved to be uniform,

and to be known to both parties, but not otherwise. It purports to make an agent for the respective parties whom they have not made for themselves. The policy provides that the defendants may cancel the policy by notice. This, of course, means notice to the plaintiff; and notice to the authorized agent of the plaintiff must be notice to him. To make Starkweather and Shepley the plaintiff's agents for this purpose the usage is invoked. If there is such a usage, it provides for a fictitious or arbitrary notice; as much so as if publication in a certain newspaper or proclamation at some public exchange were the mode of notice. If it governs this case, it must govern the next succeeding one, in which the plaintiff shall bring his action against Starkweather and Shepley for neglecting to inform him of the cancellation.

To establish a usage of this sort it must be proved to be uniform, and to be known to the plaintiff. In some cases, as where a note is made payable at a particular bank, or the contract of a charter-party is to be performed at a particular port, the ordinary usages of the bank or of the port make part of the contract. So of the usage of the stock exchange, which stands on a footing of its own, as is shown by FOLGER, J., in his able opinion in *Walls* v. *Bailey*, 49 N. Y. 464. But, in most cases, a usage which adds to or varies the contract must be proved to be known to the party sought to be bound by it; and this should clearly be the case where an artificial agency is to be made out. See *Savings Bank* v. *Ward*, 100 U. S. 195, where an attorney of the borrower had given a certificate of title upon which the lender relied in accepting a mortgage, and proof of a usage that the attorney should be considered the agent of both parties was rejected. In *Adams* v. *Otterback*, 15 How. 539, the usage of a bank, established but a short time, and not actually known to the defendant, was not permitted to bind him. This case resembles somewhat that of *Sweeting* v. *Pearce*, 9 C. B. (N. S.) 534, affirming S. C. 7 C. B. (N. S.) 449, in which one of the judges, speaking of a usage for insurance brokers to settle losses by set-off, instead of money, said it hardly seemed a reasonable custom unless known to the plaintiff, (the assured;) and as he did not know it, though it had been established for a great many years, and though the jury found that it was known to most merchants and ship-owners, they held that the plaintiff was not bound by it. See, also, on this point of actual knowledge, or that that the presumption of knowledge is rebuttable, Lawson, Usages, § 25, which is headed, "*Particular customs not known to the insured inadmissible;*" and *Walls* v. *Bailey*, 49 N. Y. 464; *Rogers* v. *Mechanics' Ins. Co.* 1 Story, 603; *Stebbins* v. *Globe Ins. Co.* 2 Hall, (N. Y.) 675; *Protection Ins. Co.* v. *Harmer*, 2 Ohio St. 452; *Howard* v. *Great Western Ins. Co.* 109 Mass. 384; *Kirchner* v. *Venus*, 12 Moore, P. C. 361; *Ward* v. *Harris*, L. R. 8 Ir. C. L. 365; *Adams* v. *Pittsburg Ins. Co.* 76 Pa. St. 411.

Upon these authorities, and upon the true theory of the admission

of usages to explain and add to contracts, we find nothing repugnant to this policy, or to any settled rule of law, which should oblige us to reject absolutely the proof of such a usage.   It is not so unreasonable as the usage in *Savings Bank* v. *Ward*, 100 U. S. 295, which purported to make an attorney contract with all the world for an indefinite period.   But, on the other hand, we do find that the addition of an arbitrary authority to a person other than the principal, to receive a notice which is to annul the contract, should be proved by the most clear and unequivocal evidence, and be brought home to the actual knowledge of the plaintiff or defendant who is to be bound by it.   The question, then, is whether the rejection of the evidence should require us to grant a new trial.   The offer of proof may not have contained all that the defendants could have produced if the ruling had been less absolute in rejecting the usage.   The fact, if it be one, that the plaintiff had once held a policy which was afterwards cancelled by notice to his brokers, would, in this connection, be highly important.   It was not offered with this view, but it may be so used on a second trial.   We think it fairer to open the case upon this question of agency, though upon this only; and it is so ordered.