## Dixie Fire Insurance Company v. A. Layne & Brother, et al.

### (Decided December 19, 1913).

### Appeal from Floyd Circuit Court.

Insurance, Fire—Cancellation of Policy—Authority of Insurance Broker.—In the absence of express authority, or of a course of dealing between the parties from which authority may be inferred, an insurance broker employed by the owner to procure insurance on his property has no authority, after the policy is issued and delivered to him unconditionally, to accept notice of or consent to its cancellation.

HARKINS & HARKINS for appellant.

S. C. FERGUSON and C. B. WHEELER for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Plaintiffs, A. Layne & Brother, a partnership, conducted a store in Laynesville, Kentucky. On October 26, 1909, the defendant, Dixie Fire Insurance Company, issued to plaintiffs a policy insuring their stock of merchandise against loss by fire in the sum of $1,500. The stock of goods was destroyed by fire on January 19, 1912. The defendant declined to pay the loss and plaintiffs brought this action to recover on the policy. Afterwards, by amended petition, they declared on a policy for the same amount alleged to have been issued on November 11, 1911. The jury returned a verdict in favor of plaintiffs, and defendant appeals.

It appears from the evidence of Anna Smith, who was formerly Anna Layne, a member of the firm, that she wanted to take out a policy on the stock of goods. She was directed to apply to Harry Marcum, an insurance agent at Catlettsburg. He sent her a policy dated October 26, 1909; whereupon she sent him a check for $37.50, to pay the premium. She had never seen Mr. Marcum, but supposed that he was the agent. She

further testified that the stock of goods had been pre-viously been invoiced, and the value of the goods ex-ceeded the amount of the insurance. The policy of in-surance which she received was signed by M. T. Mar-cum, as agent. The policy contains the following pro-vision:

"This policy may by a renewal be continued under the original stipulations, in consideration of premium for the renewed term, provided that any increase of hazard must be made known to this company at the time of renewal or this policy shall be void.

"This policy shall be cancelled at any time at the re-quest of the insured; or by the company by giving five days' notice of such cancellation. If this policy shall be cancelled as hereinbefore provided, or become void or cease, the premium having been actually paid, the un-earned portion shall be returned on surrender of this policy or last renewal, this company retaining the cus-tomary short rate; except that when this policy is can-celled by this company by giving notice, it shall retain only the pro rata premium."

In the month of January, 1910, witness received written notice from the company cancelling the policy issued on October 26, 1909. On October 24, 1910, she sent Harry G. Marcum a check for $37.50 for insurance. This check was paid. Again on October 24, 1911, she mailed to Harry G. Marcum a check for $37.50 for in-surance, which check was also paid. On neither of these dates did she receive a policy from the company.

According to the evidence for defendant, Harry G. Marcum was never its agent. On the contrary, his wife, M. T. Marcum, whose name was signed to the policy of October 26, 1909, was its only agent in the city of Cat-lettsburg. Marcum and his wife had occupied the same office, but each represented different companies. On January 8, 1910, the company, by a registered letter, notified plaintiffs that the policy of October 26, 1909, would be cancelled after the expiration of five days from that date. The unearned premium was never paid to plaintiffs because the policy was not surrendered. Har-ry G. Marcum testified that he was not the agent for the Dixie Fire Insurance Company, but that his wife was. When he received the letter from plaintiffs in regard to insurance, he had his wife issue the policy of October 26, 1909. Had no recollection of having received a check of October 24, 1910, but did receive a check for

$37.50 dated October 24, 1911. Thereupon he had his wife issue the policy dated November 11, 1911, which policy was placed on his desk. On sending a report to the general agent of the issuance of the policy, the general agent notified his wife to cancel the policy. In procuring this insurance he acted merely as broker for the plaintiffs, a capacity in which he frequently acted. On receipt of the notice by his wife to cancel the policy, he, as the agent or broker for plaintiffs, consented that this might be done and surrendered the policy for cancellation. Thereupon the policy was cancelled.

We deem it unnecessary to consider any questions connected with the policy of October 26, 1909. It is admitted in the evidence that a policy was issued on November 11, 1911, and that this policy was delivered to Harry G. Marcum as the agent or broker of the insured. Unless properly cancelled, the latter policy was in force at the time of the fire. No notice of cancellation of this policy was ever given to the insured. It does appear, however, that notice of its cancellation was given to Harry G. Marcum, and that he consented to its cancellation. The question is: Did he have the authority to do so? There is nothing in the record to show that the policy was delivered to the broker on the condition that it should not take effect until approved at the home office of the company. On the contrary, there was an unconditional delivery. That being true, the rule announced in Young v. Newark Fire Insurance Co., 59 Conn., 41, 22 Atlantic, 36, does not apply. While it is true that an insurance broker may be authorized by his principal to accept notice of cancellation, and that such authority may be directly given or may be inferred from a course of dealing between the parties, it is likewise true that there is no presumption that the agent to procure a policy of insurance has authority, after it has been procured and delivered, to receive notice of or consent to its cancellation. Johnson v. North British & Mercantile Insurance Co., 66 Ohio St., 6: On the contrary, it is well settled that where one is specially employed to procure insurance on certain property, the agency terminates with the procurement of the policy. Grace v. Insurance Co., 109 U. S., 278; Kehler v. Insurance Co., 23 Fed., 709; Insurance Co. v. Sammons, 110 Ill., 166; Assurance Soc. v. Insurance Co., 84 Va., 116; Insurance Co. v. Nill, 114 Pa. St., 248; Broadwater v. Lyons Ins. Co., 34 Minn., 465; Quong Tue Sing v. Assur. Corp., 86 Cal.,

566; Von Wein v. Insurance Co., 52 N. Y. Sup. Ct., 490; Rothschild v. Insurance Co., 74 Mo., 41; Stillwell v. Insurance Co., 72 N. Y., 385; Hermann v. Insurance Co., 100 N. Y., 411; Body v. Insurance Co., 63 Wis., 157; Lumber Co. v. Insurance Co., 95 Wis., 542. And the power to cancel cannot be implied from the power to procure. If he possesses that power it arises from some actual or apparent authority superadded to the mere power to enter into the contract. Martin v. Insurance Co., 106 Tenn., 523; Adams v. Fire Insurance Co., 17 Fed., 630; Wright v. Royal Ins. Co., 53 Fed, 340; Ostrander Fire Ins. Co., sec. 16; 1 Joyce on Ins., secs. 636, 637; 2 Joyce on Ins., secs. 1655, 1656; White v. Ins. Co., 120 Mass., 330 Mechem on Agency, sec. 931. In the present case no express authority was shown, nor was there a course of dealing between the insured and the broker from which such authority could be inferred. The insured never consented to the cancellation of the policy. Indeed, they were entirely ignorant of that fact, and believed the insurance was still in force. Under these circumstances, we conclude that plaintiffs were entitled to a peremptory. That being true, we deem it unnecessary to consider the propriety of the instructions or other questions discussed by counsel for defendant.

Judgment affirmed.