# Insurance Co. of North America *v.* Forcheimer & Co.

*Action on Policy of Marine Insurance.*

1. *Insurance effected by common carrier, covering general property in goods, and enuring to benefit of owners.*—An open policy of insurance effected by a steamship. company, engaged as a common carrier in the transportation of goods between New York and Mobile, "on account of whom it may concern, to cover shipments made on and after January 5th, 1887, which the assured, or their agents in Mobile, may agree to insure prior to the sailing of the vessel, and prior to known loss to property or vessel, note thereof being made by the assured, or their agents, in the manifest and bill of lading," against all perils of the seas, while the liability of the carrier is limited by the bill of lading to losses resulting from the negligence or other fault of its own servants and agents; expressly stipulating, also, that the insurance "shall not enure to the benefit of any carrier," and that a cancellation of the policy by either party, as authorized by its terms, is "not to prejudice any risk then pending,"—is not limited to the carrier's special property in the goods, but covers the general ownership, and enures to the benefit of the respective owners, whose names and property have been duly noted as required.

2. *Same; subsequent conduct of parties.*—The subsequent conduct of the parties, after the loss of the vessel and cargo, in paying the claims of all the owners of goods except plaintiff, as to whose goods a cancel-

[Insurance Co. of North America v. Forcheimer & Co.]

lation of the policy was claimed, is admissible evidence, as showing a practical construction of the contract by them.

3.   *Cancellation of policy; authority of agent.*—The insurance on plaintiff's goods having been effected through an agent of the steamship company by which they were carried, by notice and entry as required by the carrier's open policy of insurance, even though said agent acted therein in a dual capacity, representing both the plaintiff and the insurance company, that agency gave him no authority to cancel the policy, without plaintiff's knowledge or consent; and a cancellation agreed on between him and the insurance company, though made without knowledge of a loss, can not affect plaintiff's rights under the policy, especially where the policy contains a stipulation that a cancellation shall not prejudice pending risks.

4.   *Who is proper party plaintiff.*—A policy of insurance on goods is a contract for the payment of money, on which an action may be prosecuted in his own name by the party really interested (Code, § 2594;) and on common-law principles, without the aid of the statute, such action might be maintained by the beneficiary of a policy running to nominal parties, for the benefit of "whom it may concern."

5.   *Proof of foreign interest; judgment on reversal, amending or rendering.*—Courts can not take judicial notice of the rate of interest in another State, as shown by the table prepared and published with the Session Acts (Code, § 2791 ) ; and when foreign interest is erroneously included in a judgment, this court, reversing for the error, and rendering judgment for the proper amount, can not allow interest at the Alabama rate from the date of the judgment in the lower court.

APPEAL from the Circuit Court of Mobile.

Tried before the Hon. WM. E. CLARKE.

This action was brought by M. Forcheimer & Co., merchants and partners doing business in Mobile, against the Insurance Company of North America, a Pennsylvania corporation, to recover $10,000 insurance on "315 double bags of coffee," which had been shipped to the plaintiffs from New York, on the 1st June, 1887, per steamer *Vidette*, and was lost, with the vessel, in the Gulf of Mexico, on the night of June 13th, or the morning of the 14th. The defendant pleaded the general issue, and also several special pleas, denying any contract of insurance with plaintiffs, denying their right to sue on the policy claimed to have been made for their benefit with defendant, and alleging a cancellation of that contract. By agreement in writing, entered of record, the parties admitted the material facts, as to which there was no dispute, waived a trial by jury, and submitted the case to the decision and judgment of the court asking for a special finding of the facts, and reserving to each party the right of appeal, as provided by the statute. Code, §§ 2743-45. The facts thus admitted, and found by the court, in which the policy of insurance, with its indorsements, the bill of lading for plaintiffs' goods, and all the

other documentary evidence, are set out in full, are these in substance:

The steamer *Vidette* belonged to the New York and Mobile Steamship Line of Arnold & Co., who were engaged as common carriers in transporting goods between New York and Mobile, and other places; and Bowring & Archibald were their agents in New York. On January 5th, 1887, said Bowring & Archibald, as such agents, took out an open policy of insurance with the defendant, on merchandise to be forwarded by the steamer *Lorenzo D. Baker*, "not exceeding $75,000 at any one time;" the first clause of which, as construed by this court, was in these words: "Bowring & Archibald, agents, *on account of* whom it may be concern. To cover shipments made on and after January 5th, 1887, which the assured, or their agents, in Mobile, Ala., may agree to insure prior to the sailing of the vessel, and prior to known loss to property or vessel, note thereof being made by the assured or their agents, at their office, in the manifest and bill of lading, *in case of loss, to be paid to* them or order, *do make insurance, and cause to be insured*," &c. The policy was partly written, and partly printed, the above italicized words being printed, and the written words so interlined that, according to the defendant's contention, the clause should be read thus: "Whom it may concern: To cover Bowring & Archibald, agents, on account of shipments made," &c. The policy contained a stipulation, printed, "that this insurance shall not enure to the benefit of any carrier;" and another stipulation, also printed, "that either party is at liberty to cancel this policy at any time, on giving notice to that effect, which, however, is not to prejudice any risk then pending." The perils insured against were those "of the seas, fires, jettisons, barratry of the master and mariners, and all other perils, losses and misfortunes," &c. The policy was to continue in force for not more than one year, unless by agreement indorsed thereon. The original policy applied only to goods forwarded by the *Lorenzo D. Baker*; but, by written indorsement dated January 26th, 1887, it was agreed "that this policy shall cover steamer *Vidette*, as well as steamer *L. D. Baker*." Early in April, Bowring & Archibald, as agents, were succeeded by W. J. Best; and thereupon a memorandum was indorsed on the policy, dated New York, April 13, 1887, in these words: "On and after this date, it is understood and agreed that this policy shall cover in the name of W. J. Best, agent,

instead of Bowring & Archibald." On June 14th, another indorsement was made on the policy, to the effect that it should "cover goods shipped on deck" of each of said steamers.

The plaintiffs' goods were shipped on the *Vidette*, and a bill of lading given, which was dated New York, June 1st, 1887, signed by said Best as agent, and containing numerous exceptions from liability for losses, among which were, "fire from any cause, on land or on water, jettison, ice, freshets, floods, weather, pirates, robbers or thieves, acts of God or the country's enemies," &c. Stamped, or indorsed on this bill of lading, by said Best as agent, were these words: "Insured from New York to Mobile, subject to the terms and conditions of our open policy, No. 2076, with the Insurance Company of North America, for $10,000;" but it was admitted, and was so found by the court, that the defendant had no notice or knowledge of this bill of lading, or of its contents. The defendant had furnished to Bowring & Archibald, while they were acting as agents of said carriers, "a book in which they were required to enter all risks under said policy, No. 2076, and exhibit the same to the defendant's New York agents, within seventy-two hours after the sailing of the vessel from New York with the insured goods;" and this book, with the said policy, was turned over to Best as agent, when he succeeded them. The policy and the book were kept for Best by one Bascome, an insurance broker, through whom he conducted his insurance business. By the course of dealing between them, Bascome made, under Best's directions, entries of the risks in this book, and made report of the same to . the defendant's agents in New York. On the 5th June, 1887, Best instructed Bascome, in writing, as follows: "Please insure, under open policy issued to N. Y. and Mobile S. S. Line, as follows: Steamer *Vidette*, N. Y. to Mobile, Mobile cargo, $18,726; Montgomery, $10,234; Selma, $2,532," &c. In accordance with these instructions, Bascome made the necessary entries in the book, and exhibited them to the defendant's agents, by whom they were approved. In the heading of this book, or on the first page, was a memorandum signed by the defendant's attorneys and agents, in these words: "It is understood that all indorsements herein made apply to open policy No. 2,076, and are approved subject to the conditions therein expressed." The entry as to the cargo of the *Vidette*, dated June 6, 1887, only stated that it was "*Mdse*,

$18,726," which included plaintiffs' said bags of coffee, at a valuation of $10,000; "but neither defendant, nor its New York agents, had any knowledge or ·notice that said coffee was included in the merchandise .so insured, nor any of the items making up said cargo."

The plaintiffs carried an open policy of marine insurance with the Factors' & Traders' Mutual Insurance Company of Mobile; and on receipt. of the bill of lading for the coffee, June 6th, they had it included in this open policy, at a valuation of $10,000, and so informed the agent of the steamship company in Mobile. Said Mobile agent thereupon informed Best, the New York agent; by letter, of the fact that plaintiffs had fully insured the coffee in Mobile, but plaintiffs denied that they ever authorized him to do so. Best received this letter on the 13th June, and on the next day proceeded to obtain a cancellation of the risk on the coffee, as entered on the open policy with the defendant. It was admitted that every thing was done by said Best and the defendant which was necessary to effect a cancellation of said policy as to the risk on the coffee, and that this was done without any knowledge or notice by either of them of the loss of the vessel and cargo. It was admitted, also, that neither the steamship company, nor Best as agent, had any express authority or consent from plaintiffs to make or agree to such cancellation; and plaintiffs denied that Best had any implied authority to do so.

All the premiums due on insurance for goods covered by said open policy, No. 2,076, were paid to the defendant by the steamship company, and the plaintiffs neither paid nor were responsible for the premium paid on their shipment of coffee. Soon after the loss of the *Vidette*, the necessary proofs of loss and value of cargo having been made, the loss was settled and adjusted between said defendant and Best as the agent of the steamship company, except .as to the plaintiffs' shipment; and all the owners of the other portions of the cargo were paid by the defendant, on the production of an order and certificate from Best as to the amount due to each of them. These facts were admitted, "but with the understanding that the defendant does not admit their relevancy, nor their binding legal effect upon it." It was admitted, also, that plaintiffs had never collected anything on account of their loss, from the Factors & Traders' Insurance Company, which denied its liability, on the ground that the coffee was fully insured by the policy effected

35

with the defendant in this case, on the facts stated. No question was raised as to the proofs of loss or value.

On these facts, the court rendered judgment for the plaintiffs, for $10,000, with interest at six per cent. from the commencement of the suit. The defendant excepted to the judgment of the court, and here assigns it as error.

R. H. CLARKE, and WATTS & SON, for appellant.—(1.) The policy of insurance was not admissible as evidence under the first count, which follows the form given in the Code, and only applies to a policy issued directly to the plaintiff; nor was it admissible under the second count, which declared upon a valued policy, as distinguished from an open one—that is, one in which the value is not fixed. The third count alleges that the policy was "to cover Bowring & Archibald, agents, on account of shipments made on and after January 5," &c.; and this is the correct reading of the policy, "whom it may concern" being a mere formal heading, or opening, like the words "know all men by these presents," at the commencement of a deed. The steamship company was the principal of Bowring & Archibald, and the insurance was for its benefit, and to the extent of its insurable interest.—117 U. S. 312; 4 Mass. 82. But the policy was not complete in itself, and did not cover all shipments made by the assured, nor all the goods of any one cargo. The assured was not bound to insure all their shipments by the vessels named, but might insure a part, and leave the residue of the cargo uninsured, being required to make a note on the manifest and bill of lading, of the goods so insured, and give notice to the insurer. The doing of these things was necessary to effect insurance on the property named; the assured had the option of doing them or not; and when they were done, the insurance on the specified articles was complete, in favor of the assured.—15 Gray, 240; 23 How. 401; 12 La. Ann. 259; Parsons on Marine Insurance, vol. 1, p. 326. "For whom it may concern," when used in a policy, is a technical expression, and means, not every one interested in the property, but the party who pays the premium, or from whom the consideration moves. 16 Amer. Dec. 323; 33 Amer. Dec. 38. The stipulation declaring that the insurance shall not enure to the benefit of any carrier, was inserted to guard against the only two cases in which, without such stipulation, it would enure to the benefit of another carrier.—111 U. S. 584; 117 U. S.

312.   (2.)   But, if the policy is to be construed as for the
benefit of the shippers who complied with its terms, there
is no proof that plaintiffs ever complied with its terms, by
having the agreement noted on the manifest and bill of
lading; but, on the contrary, they effected other insurance
on the coffee for its full value, as they had a right to do.
(3.)  There is no pretense that the policy was ever trans-
ferred or assigned to plaintiffs; and not being taken out in
their name, nor for their benefit, nor assigned to them, they
show no right to recover.    (4.)   If there was any contract
made by or for plaintiffs, it was made through Best as their
agent; and on being notified that they had effected other
insurance, he promptly effected a cancellation of the risk, as
he might lawfully do.—64 N. Y. 85; 21 Wend. 279.   (5.)   Of
course, the steam-ship company might insure the goods of
their shippers, or hold themselves out as insuring them;
and this is the effect of their dealings with the plaintiffs.
But the defendant in this case had no notice of these deal-
ings, and is not responsible for them.    (6.)    No interest
could properly be allowed, in the absence of proof of the
law of New York; and this error must work a reversal of
the judgment.—*Clarke v. Pratt*, 20 Ala. 470; *Harrison v.
Harrison*, 20 Ala. 629.

OVERALL & BESTOR, and HANNIS TAYLOR, *contra.*

McCLELLAN, J.—It is not denied that the purpose of
the policy was to insure property, the general ownership of
which was in the appellees.   It may be admitted that the
steamship company had an insurable interest in the subject-
matter insured.   The company had the custody and posses-
sion of it, for the purpose of transportation; and had the
property been lost in the transit, through the fault of the
carrier, or its agents or employees, the steamship company
would have been liable to appellees for its value.   Loss,
without fault on the part of the carrier, would have entailed
no liability on it under the stipulations of the bill of lading.
In effecting the insurance, the agents of the steamship com-
pany went much further than was necessary to cover the
interest of their principal, and protect it from ultimate lia-
bility to the owners of the property.   The insurance is
against "perils of the seas, fires, jettison, barratry  .  .  .
and all other perils, losses and misfortunes."   These were
not the risk of the steamship company.   It was under no

obligation to save the plaintiffs harmless from losses resulting from these perils. On the contrary, it was expressly stipulated in the contract of shipment, that the carrier should not be liable to the owner for any loss or damage arising from any one of a number of specified causes, among which were all of those embraced in the policy of insurance, except such as involved fault on the part of the carrier, or on the part of its agents and employees. This fact, in our judgment, tends strongly to show that it was the intention of the insurers and the agents of the carrier to cover, not the latter's special interest in, and limited liability on account of the subject-matter of the policy, but the general ownership of the property. There is an express stipulation in the policy, to the effect, that the insurance evidenced by it shall not enure to the benefit of any carrier. This, we think, can not be given any field of operation consistent with the contention of the appellant, that the steamship company was the beneficiary under the contract. The contract also provides, that the agents of the carrier might agree to insure third persons, and consummate such insurance by entries and notices thereof to the insurer. This is wholly incompatable with appellant's theory, that these agents, or their principal, the steamship company, and not the third persons thus contracted with, were to be indemnified against loss. The stipulation, that cancellation shall not prejudice pending risks, must refer to the interest of third parties, and would have been wholly useless and meaningless, if the only parties to the transaction had been the insurer and the nominally insured. It is not attempted to be denied, that the owners of other merchandise, shipped on and lost with the steamship *Vidette*, and which was insured at the same time, under the same circumstances, and by the same methods that appellees' goods were insured, were paid the amount of their respective losses; and no question as to the propriety of this course was made by any of the parties, nominal or beneficial, to the contract. It is in evidence, that the alleged cancellation was consequent upon the information that the consignees had effected other insurance on their goods; and the effort to cancel must have proceeded on the theory, that the insurance secured in Mobile covered the same interest in the property as that effected in New York; and this fact may, therefore, be looked to, as showing a construction by the insurance company and the steamship company, that the New York policy covered the general ownership, and pro-

[Insurance Co. of North America v. Forcheimer & Co.]

tected the appellees. These considerations force us to the conclusion, reached in the court below, that the insurance was intended to cover the general property in the merchandise, and was for the benefit of Forcheimer & Co.; and in consonance with the intent thus arrived at, as well as in conservation of the natural arrangement of the opening words of the policy, we hold, that the insurance was effected, not to cover the agents of the steamship company, but on account of whom it might concern, and enured to the benefit of the owners of the goods entered on the open or running policy, among whom were the plaintiffs.

It follows, that the insistance of the appellant, that there was a valid cancellation of the policy, consummated on June 16th, 1887, by and between the agent of the steamship company and the insurer, must stand or fall, as it shall be determined that Best, who at that time was the regular agent of the steamship company, was, with respect to the cancellation, the agent of the appellee, or that he was not. Whether Best is to be regarded as the agent of the appellees in effecting the insurance, is, at least, open to grave doubt. It is certain that, in some sense, he represented the appellant, and was authorized to agree with third parties for the entry of risks on the open or running policy, and that he did so agree with appellee's consignor for the risk taken on the goods involved here. It may be, that he acted in that matter in a dual capacity, as the agent of both the insurer and the insured. We deem it unnecessary to fix his *status* with respect to the act of procuring the insurance. Even admitting that, in entering the goods of the appellees on the open policy of the appellant, he represented the former, it by no follows that he was authorized to cancel the insurance thus made. The policy itself, to our minds, provides against such a cancellation to the prejudice of appellees' right under it; and the law appears to be well settled, that authority to procure is not authority to cancel insurance once made. In England it is held, that "the cancellation of the policy being an act which destroys the relation, not only of the assured and the insurer, but of the insurance broker as agent for the assured, can not for that reason be justified by any supposed authority implied from the existence of that relation, or from the fact of the policy being left in the broker's hands, and consequently depends for sanction on the express authority of the principal."—1 Arnould, Marine Insurance, 190. And in this country it is held, that "an agency to procure insur-

ance is ended when the insurance is procured, and the policy delivered to the principal; and the agent employed to procure the insurance has no power, after the policy is so delivered, to consent to a cancellation."—*Rothschild v. Cent. Ins. Co.*, 7 Ins. L. J. 639; *Bennett v. City Ins. Co.*, 51 N. Y. 243; *Latoix v. Germania Ins. Co.*, 27 La. Ann. 113.

The policy sued on was delivered to the insured, in the only way possible under the circumstances, and in the way contemplated by the parties, before the alleged cancellation. The City Court rightly found, "that neither said Best, as such agent of such steamphip company, nor defendant, had from the plaintiffs any express authority or consent that they, or either of them, might cancel said insurance." There could have been no implied authority, as we have seen, for such cancellation; and we accordingly hold that there was no cancellation of the policy.

Section 2594 of the Code provides, that "actions on promissory notes, bonds, or other contracts, express or implied, for the payment of money, must be prosecuted in the name of the party really interested, whether he has the legal title or not." A contract of insurance is one within the meaning of this statute.—*Perry v. Merchants' Ins. Co.*, 25 Ala. 355. The plaintiffs being, as we have held, the beneficiaries under the policy—the parties really interested in the contract—the suit was, under the section referred to, properly instituted in their names. But we apprehend that, even in the absence of the statute, suit on a policy running to nominal parties, for the benefit of "whom it may concern," is properly instituted in the name of the parties intended to be protected.—2 Arnould, Mar. Ins. 1120; *Daniels v. Citizens' Ins. Co.*, 5 Fed. Rep. 425, and cases cited.

There was no agreement, and no evidence offered in the court below, as to the rate of interest in the State of New York, where the contract was made and was to be performed. Under the decisions of this court, the table of interest rates in the several States, published with the acts of the General Assembly, is only *prima facie* evidence of those rates, to be offered as other evidence, subject to the right of controversy by the party against whom interest is claimed. Courts can not take judicial notice of the rates thus published. The judgment below was for the amount of the policy, with interest from the institution of the suit, amounting in all to the sum of ten thousand four hundred and twenty-five dollars. To thus include interest, without evidence of the rate appli-

cable to the contract, was error, for which the judgment must be reversed.—*Clarke v. Pratt*, 20 Ala. 470; *Harrison v. Harrison*, 20 Ala. 649.

It is insisted by appellees, that if the case is reversed on this ground alone, the judgment below should be corrected, and here rendered for the amount of the valued policy, with interest at 8 per cent., from the time of trial in the City Court, on the assumption that the liability was then merged into the Alabama judgment, which bears interest at that rate. We do not think this can be done, for the reason, that a judgment of reversal here operates to expunge the judgment in the court below, and to leave the claim for interest precisely where it was before the rendition of that judgment, dependent upon the laws of New York, of which there was and is no proof.

Under the authority of *Harrison v. Harrison, supra*, however, judgment may be here rendered for ten thousand dollars, the amount of the policy, without interest, and it is accordingly so ordered.

The view we have taken of this case renders it unnecessary to consider the cross-assignments of error.

Reversed and rendered.