[Insurance Companies v. Raden.]


# Insurance Companies (Niagara Fire, and Hamburg-Bremen) *v.* Raden.

*Bill in Equity to reinstate Cancelled Policies of Insurance.*

1. *Cancellation of policy; authority of agent.*—An agency to procure insurance is ended when the policy is procured and delivered to the principal; and the agent has no power afterwards to consent to a cancellation, or to accept notice of an intended cancellation by the insurer.

2. *Same; dual agency* —An express stipulation in the policy authorizing the company to terminate it at any time on giving notice to that effect to the assured, "or to the person who may have procured the insurance to be taken," can not be applied to a case where the same person acted as agent for both parties in procuring and issuing the policy, and notice of the intended cancellation was not given to the assured in person.

3. *Ratification of cancellation.*—A ratification of the cancellation of a policy, which was procured for the insured by an agent of the insurance company, will not be presumed from his acceptance, after a loss, of a policy in another company, which was procured by the same agent, when it is not shown that the assured was fully informed of all the facts connected with the supposed cancellation and substitution, and of his legal rights as determined by those facts; nor will it be presumed from the institution of a suit on the substituted policy, which was induced by the misrepresentation of the agent to the attorneys of the assured.

APPEAL from the City Court of Birmingham, in equity. Heard before the Hon. H. A. SHARPE.

HEWITT, WALKER & PORTER, for appellants.—The policies here sought to be reinstated were procured for complainant by Smith, on his cancellation of her original policy in the London, Liverpool & Globe Insurance, which was procured through the agency of Flanagan & Langley, and which was cancelled by Smith in obedience to orders from said company; and these policies were afterwards (but before a loss) cancelled by him, as per instructions from the companies, and other policies substituted in their stead. There is no question that all this was done in good faith. On the day after the fire, the substituted policies was delivered by Smith to the complainant, and were accepted by her after consultation with one or two friends; and suits on these substituted policies are now pending. These facts show a ratification by complainant of the acts of Smith as her agent,

and estop her from now denying his authority.—*Clealand v. Walker*, 11 Ala. 1058; *Stark v. Sikes*, 69 Amer. Dec. 270; *Persons v. McKibben*, 5 Ind. 261; *Blevins v. Pope*, 7 Ala. 371; *Wood v. McCain*, 7 Ala. 800; *Reynolds v. Dothard*, 11 Ala. 531; Story on Agency, § 244; *Dearing v. Lightfoot*, 16 Ala. 28; *Jones v. Atkinson*, 72 Ala. 248; 2 M. & S. 485; *Routh v. Thompson*, 13 East, 279; 1 Phil. Insurance, 519; 2 *Ib*. 337, 369; 4 Moore, 8; 5 Metc. 192; 72 N. Y. 385; 36 Mich. 502.

WEBB & TILLMAN, and McINTOSH & ALTMAN, *contra*. (1.) The policies sought to be reinstated were never legally cancelled.—*Insurance Co. v. Forcheimer & Co.*, at present term, 86 Ala. 541; *Herman v. Insurance Co.*, 100 N. Y. 411; 109 U. S. 278; 23 Fed. Rep. 709; 17 Fed. Rep. 630; 115 Mass. 241; May on Insurance, § 574. (2.) The attempted cancellation was never ratified, because the complainant was never informed of the facts, nor of her legal rights as governed by the facts.

SOMERVILLE, J.—The bill is filed by the appellee, Mrs. Raden, to restore or reinstate two policies of fire insurance alleged to have been cancelled by fraud, or mistake of fact, and to re-establish these instruments as evidences of the liability of the defendant companies by which they were issued, and to incidentally enforce them by the rendition of moneyed decrees for the amount of the loss by fire, not exceeding the amount of the policies, which were each for the sum of $1,250. The court below granted the full relief prayed in the bill, holding both of the policies to be of binding force.

A demurrer was filed to the bill, but no assignment of error is based on the action of the court in overruling it. Objection to this ruling is expressly waived, and the only question presented by the record is, whether the insurers— the Niagara Fire Insurance Company, and the Hamburg-Bremen Insurance Company—one or both, are liable on these policies, under the facts disclosed by the evidence.

The complainant's property in Bessemer is shown to have been destroyed by fire on the night of July 19th, 1887; and no controversy is raised as to its value, or the amount of the loss. The property was originally insured in the Liverpool, London & Globe Insurance Company, on July 2d, 1887, for $2,500; but this policy was cancelled, and the two policies

here in controversy were substituted in its place, by consent of the insured, a week or ten days after this cancellation.

The defense to the present suit is, that each of the policies in controversy was cancelled on July 18th, 1887—the day before the occurrence of the loss. This is alleged to have been effected by giving notice of such cancellation to one Langley, who is claimed to have been the agent of Mrs. Raden, the insured, and to him was paid the return premium. It is not denied that cancellation was effected, if Langley was the agent of the insured for the purpose of receiving the notice and the return premium. ' The whole question of cancellation hinges on this one fact.

One John G. Smith was the agent of the defendant companies at Birmingham, Alabama. He was also agent for the Liverpool, London & Globe Insurance Company, in which the first policy was obtained. Flanagan & Langley were insurance agents at Bessemer, Alabama, their exact relations towards Smith not being made very clear by the testimony. The testimony is very conflicting on the point as to whether they acted as agents of Smith, or of Mrs. Raden, or merely as insurance brokers in procuring the first policy, as to the cancellation of which no controversy exists. Flanagan says they acted for Smith, and Smith asserts they acted for Mrs. Raden. This Mrs. Raden denies. Langley says they acted as insurance brokers, dividing commissions with Smith. It is quite clear to us, that Langley, as he himself testifies, solicited the insurance of Mrs. Raden; that she was induced to make a written application for the first policy, and that it was countersigned by Flanagan & Langley, as agents of the Liverpool, London & Globe Company, and was transmitted by them to Smith, at Birmingham. This document appears in the record as an exhibit to Langley's deposition, and is more trustworthy than the less certain memory of witnesses.

All of this testimony relates, as we have said, to the first policy, admitted to be cancelled. We do not deem it necessary to discuss this part of the evidence at length, as it does not seem to be of controlling importance. The question is, who procured the issue of the policies here in controversy? Did Langley, or his firm, do so as the agents of Mrs. Raden? If not, the notice to Langley, and the payment of the return premium to him, did not operate to cancel these policies, or rescind the contract of insurance evidenced by them.

We are satisfied from the testimony that Smith, and not Langley, procured these policies to be issued. There is

scarcely enough conflict in the evidence to raise any serious
controversy on this point. Smith was himself the authorized
agent of these defendant companies at Birmingham. Flan-
agan & Langley had no connection with them. When
ordered to cancel the Liverpool, London & Globe policy, he
at once volunteered to substitute for the cancelled policy the
two policies in controversy, which he transmitted to Mrs.
Raden through Flanagan & Langley for delivery; and this
seems to be all the latter firm had to do with the matter.
Smith, it is true, insists on the fact of this firm's agency for
the insured, and testifies that they were her agents; but the
facts stated by him refute the existence of the alleged
agency. He says: "After the cancellation [of the Liver-
pool, London & Globe policy], Mrs. Raden's property was
insured in other companies *by me*, and the policy in the
Liverpool, London & Globe was surrendered by me to Flan-
agan & Langley. In order to secure her from loss, *I* in-
sured her property in other companies." And again,
on cross-examination: "When the Liverpool, London &
Globe Insurance Company policy was cancelled, I issued the
policies in the defendant companies, without the knowledge
of Mrs. Raden, or her agents, Flanagan & Langley."

As to the policy of one of the defendants—the Hamburg-
Bremen Insurance Company—we need say but little. Even
if it were admitted that Langley had procured this policy
to be issued, or if it be assumed that Smith did so, the
agency ceased when the policy was delivered to the insured.
We have decided at the present term, that "an agency to
procure insurance is ended when the policy is procured, and
the policy delivered to the principal; and the agent em-
ployed to procure the insurance has no power, after the
policy is so delivered, to consent to cancellation."—*Ins.
Co. of North America v. Forcheimer & Co.*, 86 Ala. 541.
This doctrine is fully supported by the adjudged cases.
*Herman v. The Niagara Fire Ins. Co.*, 100 N. Y. 411;
1 Wood on Fire Ins. (2d Ed.), 337, § 142. Notice of can-
cellation to Langley, therefore, with his consent to rescission,
was no notice to, or consent by Mrs. Raden.—*Grace v.
American Cent. Ins. Co.*, 109 U. S. 278; May on Insurance,
(2d Ed.), § 138.

As to the policy of the other defendant—the Niagara Fire
Insurance Company—a slightly different view must be taken,
because of the following provision relating to the cancella-
tion of policies: "This insurance may be terminated at any

time, by request of the assured, or by the company on giving notice to that effect to the assured, or to the *person who may have procured this insurance* to be taken.٭ On surrender of the policy, the company shall refund any premium that may have been paid, reserving the usual short rates in the first case, and *pro rata* rates in the other case."

This policy, as we have shown, was obtained for Mrs. Raden by Smith, not by Langley. Smith was the person who procured it to be taken, within the meaning of the policy. Now, Smith was the agent of the company to issue the policy. He therefore occupied an ambiguous attitude, or a double agency, involving conflicting rights and duties. The provision above cited was not intended to cover a case of this character. It could not have been contemplated that the agent of the company should give notice to himself, as agent also of the insured, of the cancellation, or rescission of the contract of insurance, nor that he should pay to himself the return premium required to be paid under the terms of the contract, without which payment there could be no cancellation. If susceptible of this construction, the provision would be invalid as in violation of all sound principles of public policy, and we would so declare it. The law will not permit an agent thus to serve two masters with conflicting interests.—*Commercial Fire Ins. Co. v. Allen,* 80 Ala. 571, and cases cited on p. 576; *Piedmont & A. Ins. Co. v. Young,* 58 Ala. 476; 2 Wood on Fire Ins. (2d Ed.), 833 *et seq.,* §409; *Kausal v. Minnesota &c. Association,* 47 Amer. Rep. 776.

Under these principles, Mrs. Raden had no notice of the cancellation until the loss by fire had occurred, and the liability for such loss had been fastened on the insurers. Nor was the return premium paid back to her before such loss, the payment to Langley being no payment to her.

We come next to the question of ratification. It is contended that Mrs. Raden ratified the alleged cancellation, in two ways: *first,* by accepting two other policies of insurance —one in the Mobile Fire Insurance Company, and the other in the St. Paul Fire and Marine Insurance Company—which were substituted by Smith for the policies in controversy, covering the same property, and for like amounts; and, *secondly,* by having brought suit on these substituted policies, before filing the present bill. And it is said that all this was done by Mrs. Raden with a full knowledge of the facts of the case on her part.

These policies were not delivered to Mrs. Raden until after her property was destroyed by fire, and her right to indemnity for the loss had accrued, although they had been taken out by Smith, without her knowledge, before the fire. Smith, again, in this matter acted as agent for Mrs. Raden. He was an insurance agent, shown to be intelligent, and presumably an expert in matters pertaining to this subject. She was a foreigner by birth, and evidently ignorant as to her legal rights, unless fully instructed as to them.   Under this state of facts, Smith owed her peculiar duties before she can be declared by a court of equity to have voluntarily abandoned her claim under these policies against the defendants.    He should not only have disclosed to her all the facts bearing on the case, known to him, but it should be shown to the court that she knew the transaction to be *impeachable* —that is, that she knew she had a legal right to refuse to accept the new policies, and to claim indemnity under those in controversy.— *Voltz v. Voltz*, 75 Ala. 567.    The inference is fair, that Smith was aware of the fact that Mrs. Raden had a valid claim against the defendant companies, and it is clear that she was ignorant of this legal right.    This misapprehension he should have rectified, and his failure to do so is a sufficient ground for equitable relief.—2 Pom. Eq. Jur. §847.

It is not shown, moreover, that Mrs. Raden knew, at the time of her alleged ratification, that Smith had procured the new policies upon the representation that no other insurance existed on the property—based, no doubt, on the idea that the policies in the defendant companies had been cancelled, which, as we have seen, was not true.    Whether this would, or would not vitiate the new policies in the Mobile and St. Paul companies, we do not decide.    We say only that the fact in question was one material in its bearings, and that a ratification made in ignorance of it, can not be held to be binding.

The suits at law brought on these policies by Mrs. Raden's attorneys are clearly shown to have been instituted under a mistake of fact.    Smith led these attorneys to believe that Langley was the agent of their client, and that the notice of cancellation given, and the return premium paid to him, effected a rescission of the policies in the defendant companies—the Niagara Fire and the Hamburg-Bremen Insurance Companies.    These suits can not, for this reason, operate as a ratification by Mrs. Raden of the acceptance of the new

[Pritchett v. Jones.]

policies, and as an intentional abandonment of her vested rights under the policies in existence when the loss occurred.

Our judgment is, that the chancellor did not err in holding the policies here in controversy to be binding on the insurers, and that his decree granting the relief prayed is free from error, and must be affirmed.

