116 So.2d 388

**IOWA MUTUAL INSURANCE CO.**

v.

**John W. WEST and M. O. Boatright, d/b/a Standard Construction Co.**

**1 Div. 759.**

Court of Appeals of Alabama.

May 5, 1959.

Rehearing Denied June 9, 1959.

Johnston, McCall & Johnston, Mobile, for appellant.

**334**

Howell & Johnston, Mobile, for appellee.

PRICE, Judge.

This is an appeal from a judgment below in favor of the plaintiff. The cause was submitted on the merits and motions by appellee to strike the transcript of the evidence, and to dismiss the appeal.

### On the motions.

Appellee first moved to dismiss the appeal on the grounds that the transcript of the evidence was established in the trial court on December 3, 1957, and the record was not filed in this court until February 5, 1958, which date was more than sixty days after the transcript of the evidence was established in the trial court.

Supreme Court Rule 37, Code 1940, Tit. 7 Appendix.

Appellant replied to said motion, setting up that it is shown in the record that the transcript of the evidence was filed with the circuit clerk on December 3, 1957; that thereafter, on December 11, 1957, which was within the ten days provided by Sec. 827(1a), Title 7, Code 1940, for filing objections to the transcript, appellant filed with the clerk written objections to the certified transcript, with certificate of notice to opposing counsel that the objections would be called to the attention of the trial court on the 16th day of December, 1957; that before the day set for the hearing of said objections counsel for appellee consented before the court for the court reporter to correct the transcript of the evidence to meet the objections; that when the court reporter had corrected the transcript of the evidence and redelivered it to the clerk, appellant moved the court to allow it to withdraw its said objections. The court entered the following order: "Monday, December 16, 1957. * * * This day in open court came the parties by their attorneys, and upon motion of the defendant; It is ordered by the court that defendant be, and it is hereby allowed to withdraw its objections to certified transcript filed December 11, 1957."

Thereafter, appellee filed motion to strike the transcript of the evidence on the grounds that appellant admitted in its reply to the motion to dismiss the appeal that the correctness of the transcript of the evidence was questioned, and the trial court's ruling was not endorsed on the transcript as required by Sections 827(1a), 827(1b), Title 7, Code supra.

We fail to find merit in either of appellee's motions. The appeal was not due to be dismissed because of delay in filing the transcript in this court. We hold that the transcript of the evidence was not established until the court's order was made on the 16th day of December, 1957. The transcript of the record was filed in this court within sixty days thereafter.

As for appellee's second motion, it is not contemplated by Section 827(1a), Code supra, that an endorsement of the court's ruling will be made on the transcript, when in fact there is no hearing of objections interposed and no ruling of the court thereon.

### On the merits.

The suit is based on an automobile liability policy issued to plaintiff by defendant. The cause was tried by the court without the intervention of a jury. Judgment was rendered in favor of plaintiffs and against the defendant in the amount of $468.72. Defendant appeals.

The complaint, as last amended, reads as follows:

### "Count One

"Plaintiffs claim of the defendant the sum of One Thousand and No/100 ($1,000.00) Dollars as damages for breach of a contract of insurance entered into by and between plaintiffs and defendant on, to-wit, the 11th. day of September, 1954, whereby defendant, for and in consideration of the sum of $54.-60, which sum plaintiffs aver was paid by them to defendant, agreed to insure the plaintiffs against any liability sustained to any person caused by accident arising out of ownership, maintenance or use by plaintiffs of a 1953 Ford one-half ton pickup truck, Motor No. FloB 3W16503 for a period of time from September 11, 1954, to September 11, 1955, and for the same consideration defendants agreed to defend any suit against the plaintiffs which alleged injuries, sickness, disease, or damage to property or person on account of ownership, maintenance or use by plaintiffs of said truck, even if such suit were groundless, false or fraudulent. Defendant further agreed in said contract to reimburse plaintiffs for all reasonable expense, other than for loss of earnings, incurred in defending such suits. Plaintiffs further aver that defendant and plaintiffs further agreed in said contract that the liability of the defendant would be limited to the amount of $5,000.00 for each person injured as a result of an accident, $10,000.00 for each such accident and a total property damage liability of $5,000.00 for each such accident. Plaintiffs further aver and allege that on, to-wit, the 21st. day of July, 1955, while said contract of insurance was in full force and affect the said motor vehicle described in the said contract of insurance was involved in an automobile accident, with an automobile owned by one A. W. Marshall and being operated by said A. W. Marshall's wife, Virginia Marshall, on Highway 43 in the City of Jackson, Clarke County, Alabama. Plaintiffs aver that they became liable to the Marshalls by virtue of the said automobile accident for damage to the automobile of A. W. Marshall and for personal injuries of Virginia Marshall. Plaintiffs further aver that they notified the company of the accident, however, the company denied to plaintiffs coverage under said contract on the grounds that they had not received payment of the premiums, when in fact they had received payment of the premiums on said policy, and plaintiffs aver that although they had performed all obligations of the contract on their part that the defendant breached said contract in that after being notified of said loss it denied coverage on the grounds that it had not received premiums, when in fact it had been paid such premiums by the plaintiffs. The plaintiffs aver that after defendants denied coverage of the said contract, and on, to-wit, August 2, 1955, A. W. Marshall filed suit against the plaintiff John West, one of the partners (I.J.L.) for the sum of $500.00 in the Circuit Court of Mobile County, Alabama at Law. And on, to-wit, August 2, 1955, the said Virginia Marshall filed suit against the plaintiff John West, one of the Partners (I.J.L.) for the sum of $1,000.00 as damages for personal injuries in the Circuit Court of Mobile County, Alabama, and that Plaintiffs (I.J.L.) were caused to hire an attorney and pay his fee and to pay the Marshalls to get the said suits settled which sums plaintiffs (I.J.L.) aver they paid and said suits were thereafter dismissed and as a direct and proximate cause of the breach of the said

contract by the defendant, the plaintiffs were caused to incur the expense of defending said suits, and the plaintiffs further aver and allege that they were caused to incur attorney's fees in defending said suits and were caused to pay the said Marshalls for their damages sustained in said accident, and plaintiffs further aver that as a direct and proximate result of the breach by the defendant that the State of Alabama Department of Public Safety revoked their drivers license and the license plates on all of their motor vehicles because they were unable to furnish proof that they had liability insurance at the time of the accident which proof defendant declined to make on plaintiffs behalf and plaintiffs were caused embarrassment and were put to great inconvenience, all to the plaintiffs' detriment hence this suit.

### "Count Two

"Plaintiffs claims of the defendant One Thousand and No/100 ($1,000.00) Dollars due on a policy, whereby the defendant on, to-wit, the 11th. day of September, 1954, insured the plaintiffs against loss sustained by any person caused by accident and arising out of the ownership, maintenance or use of one 1953 Ford one half ton truck, Motor No. F10B 3w16503 and the plaintiffs aver that on, to-wit, the 21st. day of July, 1955, while said policy was in full force and effect that said truck was involved in an automobile accident and of this defendant has had notice, and the plaintiffs were caused to suffer loss or liability to the owner and to the driver of the other vehicle involved in this accident by virtue of said accident and were caused to incur expense in defending suits filed by the owner and driver of the other vehicle in that plaintiffs were caused to hire an attorney and to pay his fee and were caused to pay a sum of money to the owner and to the driver of the other vehicle involved in said accident in consideration of which sum paid by plaintiffs the said owner and the said driver of the other vehicle involved in this collision dismissed their said suits and released plaintiffs from further liability on account of said accident, and plaintiffs aver that the loss they sustained by having to hire an attorney and by having to pay the owner and the driver of the other vehicle involved in this said accident was a loss which arose out of the ownership and maintenance or use of said insured automobile. Said policy is the property of the plaintiffs."

■ Assignments of error 1 and 2 take the point that the court erred in overruling the demurrer to each count of the amended complaint. The sole ground of demurrer argued in brief is: "1. Because the allegations that the plaintiffs became legally obligated to the Marshalls. is a conclusion of the pleader not supported by any averment of facts." The statement is made in brief that, "In particular, the complaint does not allege that the insured vehicle was being driven by either of the assureds or by an agent, servant or employee of theirs, nor, in fact, does either count aver by whom the vehicle was being driven at the time of the alleged accident with the Marshall vehicle. Each count fails to disclose facts or a situation which would make either West or Boatright liable so that the appellant became obligated to do anything under the insurance contract."

A demurrer which does not specify the alleged imperfection in the pleading attacked thereby is properly overruled. Section 236, Title 7, Code 1940. Moreover, the plaintiff presented testimony tending to show that John West, one of the assureds, was driving the truck described in the policy at the time it collided with the Marshall automobile; that John West and M. O. Boatright were partners doing business as Standard Construction Company; that the truck was being used in the regular business of the partnership and was registered in the name of M. O. Boatright.

Plaintiff's testimony further showed that West was following closely behind the vehicle being driven by Virginia Marshall, and owned by A. W. Marshall, on a public street in the town of Jackson, Alabama; that the Marshall automobile stopped for a red

light and the truck driven by John West ran into the rear of the stopped Marshall automobile. The issue was tried as though the alleged omitted allegations were made in the complaint. Federal Automobile Insurance Ass'n, v. Meyers, 218 Ala. 520, 119 So. 230. Error, if any, in the overruling of the demurrer, was without injury. Supreme Court Rule 45.

The plaintiffs' evidence tended to show that the Marshall car was damaged in the amount of $175 and Mrs. Marshall sustained a $25 doctor bill. Plaintiffs notified the Gulf States Insurance Agency of the accident and were advised by Mr. Mitchell that the policy had been cancelled for nonpayment of premium.

Two suits were filed by the Marshalls against John Winfield West in the Circuit Court of Mobile County, for damages growing out of the accident.

West and Boatright received notices requiring each of them to deposit with the Safety Responsibility Unit of the Department of Public Safety, certified check, surety bond or negotiable securities in the amount of $300, or to submit release from the persons whose property was damaged in the accident. Penalty provided for noncompliance with the requirements of the law within the time specified in the notice was suspension of West's drivers license and all license plates issued in Boatright's name.

Upon service of process in the two suits West entered an appearance in his own behalf. After receipt of the notices from the Department of Public Safety plaintiffs employed the law firm of Howell and Johnston to prevent their drivers license and license plates from being picked up. The attorneys negotiated a settlement of the suits for the sum of $200, and the Marshalls paid the court cost and dismissed the suits against West. Howell & Johnston were employed on the basis of a reasonable fee. They were paid $50 as a retainer, with the understanding the balance of the fee would be paid when the case was completed.

There was expert testimony to the effect that $220 was a reasonable attorney's fee for the services rendered.

On September 11, 1954, W. H. Mitchell and Frank Carron were partners doing business under the name of Gulf States Insurance Agency. On that day Mr. Mitchell issued a policy of automobile insurance, No. A–761003, on behalf of the appellant, Iowa Mutual Insurance Company, to the plaintiffs insuring the truck described therein for a term of one year. The policy was introduced in evidence. The total annual premium was $54.60. Receipts showing payments totalling $54.60 by plaintiffs to Gulf States Insurance Agency on policy "Iowa Mutual No. A–761003" were introduced in evidence.

At the time this policy was taken out, plaintiffs also took out a policy of Contractor's Public Liability and a Workman's Compensation policy. Plaintiffs testified that in October or November of 1954, they notified Gulf States Insurance Agency to cancel Contractor's and Workmen's Compensation policies.

Both plaintiffs testified they had not received notice of cancellation of the automobile liability policy.

For the defendant, W. H. Mitchell testified he did not recall that plaintiffs gave notice of cancellation of the public liability and workmen's compensation policies, but that he cancelled them effective January 10, 1955. On February 18, 1955, witness instructed his office assistant to send cancellation notice to each of the assureds in the automobile liability policy. This was done, the effective date of cancellation being March 1, 1955. The $54.60 testified to by plaintiffs was all that was ever paid on premiums. Allowing adjustment between the earned premiums on the Workmen's Compensation and public liability policies and the unearned premiums on the automobile policy when cancelled the plaintiffs still owe some four or five dollars on premiums.

Mrs. Updike, Mr. Mitchell's office assistant, testified she prepared the forms of

cancellation pursuant to Mr. Mitchell's instructions and mailed them to the address of plaintiffs given in the automobile policy. Copies of notice of cancellation and the post office receipts issued to Gulf States Insurance Agency were introduced in evidence.

The cancellation clause in the policy reads:

"23. This policy may be canceled by the named insured by surrender thereof or by mailing to the company written notice stating when thereafter such cancelation shall be effective. This policy may be canceled by the company by mailing to the named insured at the address shown in this policy written notice stating when not less than ten days thereafter such cancelation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date and hour of cancelation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the named insured or by the company shall be equivalent to mailing.

"If the named insured cancels, earned premiums shall be computed in accordance with the customary short rate table and procedure. If the company cancels, earned premiums shall be computed pro rata * * *. Premium adjustment may be made at the time cancelation is effected and, if not then made, shall be made as soon as practicable after cancelation becomes effective. The company's check or the check of its representative mailed or delivered as aforesaid shall be a sufficient tender of any refund of premium due to the named insured."

The agency contract between defendant and Gulf States Insurance Agency reads in pertinent part:

"This agreement Witnesseth:

"That Iowa Mutual Insurance Company, hereinafter referred to as the Company (ies) by W. J. Perryman & Company, Inc., hereinafter referred to as General Agents, does hereby appoint Gulf States Insurance Agency of Mobile, Alabama as its authorized agent at Mobile, Ala., and vicinity for the consideration hereinafter expresses and it is hereby agreed as follows:

"1. That the agent may procure acceptable applications and perform other acts as Agent as may be expressly provided hereinafter for the following kind of insurance upon which the company agrees to allow the Agent commissions at a rate opposite the class."

The provisions of the agency contract in regard to cancellation of policies, are as follows:

"12. The Company and/or General Agent shall have the right at any time to reject any risk submitted by the Agent and the Agent shall not be entitled to any commission on any risk cancelled without charge to the insured.

"13. The Agent shall immediately upon being requested to do so by the Company or General Agent, effect cancellation of any policy or binder issued by him, procure the surrender thereof by the insured and transmit the same to the Company or the General Agent without delay, and upon failure to do so shall reimburse or idemnify the Company or the General Agent for any loss or damage caused thereby. This obligation shall continue as long as any policy of insurance or binder issued by the Agent remains in effect, irrespective of whether the Agent's authority to accept risks, countersign and issue policies hereunder has been terminated or revoked."

It is insisted by the defendant that the authority of W. H. Mitchell to cancel policies is given in the agency contract, and that paragraph five in particular gives this authority. This pararaph provides:

"5. The General Agent agrees to forward to the Agent not later than the fifteenth day of each month a statement setting forth all policies or endorsements with the premiums or return premiums thereon issued or cancelled by or through the Agent during the previous month, and settlement of the account shall be made on the basis of the General Agents Statement."

On cross examination Mr. Mitchell testified that he was a special agent for Iowa Mutual Insurance Company; that W. J. Perryman & Company was the general agent for said company and that he had never received any specific instruction or request from W. J. Perryman & Company or Iowa Mutual Insurance Company in regard to the policy involved here. He stated he had cancelled thousands of policies under the contract and that he had authority as a licensed agent to cancel a policy if he saw fit to do so.

In Trans-America Ins. Co. v. Wilson, 262 Ala. 532, 80 So.2d 253, the court said: "The authorities are clear that an insurer asserting cancellation of a policy has the burden of proof."

In Mobile Fire & Marine Ins. Co. v. Kraft, 36 Ala.App. 684, 63 So.2d 34, it was said: "The law seems to be well settled that authority to an agent limited solely to the procurement of a policy does not include per se the right of the agent to cancel the policy. Insurance Co. of North America v. Forcheimer & Co., 86 Ala. 541, 5 So. 870; Insurance Companies v. Raden (Niagra Fire Ins. Co. v. Raden), 87 Ala. 311, 5 So. 876; Spann v. Commercial Standard Ins. Co. of Dallas, Texas, 8 Cir., 82 F.2d 593; City of New York Ins. Co. v. Jordan, 5 Cir., 284 F. 420; Jordan v. Commercial Union Fire Ins. Co. of N. Y., La.App., 167 So. 227; 45 C.J.S. Insurance §§ 450(2), 456 pp. 94, 111."

The extent of the authority of the agent is plainly set out in the agency contract. We are of opinion that such contract does not confer authority on the Gulf States Agency to cancel the insurance. Since the evidence fails to show cancellation of the policy by an agent with authority to cancel, we conclude that the defendant has failed to sustain the burden placed upon it. The judgment must be affirmed.

■ The court entered a general judgment. We have concluded that the evidence supports the judgment as to count 2. "If the evidence is sufficient to support any count of the complaint the judgment will therefore be referred to such count." Assignment of error will not be considered as to count 1. Nahrgang v. W. K. R. G. Radio Station, 38 Ala.App. 323, 83 So.2d 733.

The defendant insists the court erred in the admission of certain evidence over defendants' objection.

This question was propounded to plaintiffs' witness Tom Johnston. "Q. Does the Department of Public Safety ever process a claim unless an affidavit is filed by the party claimant?" The witness answered "No."

This question was propounded to plaintiffs' witness John K. West: "Have you ever received any money on the return of the earned premiums?" The witness answered "No."

■ The rule is well established that, "when a trial is had without the intervention of a jury, an error in the admission of evidence will not authorize a reversal, if the judgment rendered is sustained by legal evidence. First National Bank of Talladega v. Chaffin, 118 Ala. 246, 256, 24 So. 80; Woodrow v. Hawving, 105 Ala. 240, 16 So. 720. Pensacola, St. A. & Gulf S. S. Co. v. Brooks, 14 Ala.App. 364, 70 So. 968.

■ Defense counsel insists further that the court erred in sustaining plaintiffs' objection to this question asked defendant's witness W. H. Mitchell: "Q. You did, though, and you had, prior to this, cancelled numerous policies under that authority." Error, if any, in this ruling was harmless.

The witness had previously testified on cross examination that he had "cancelled thousands of them, under this contract", and on redirect examination that he had cancelled, "lots of them, every week sometimes", and that pursuant to the contract he had cancelled policies, and had "cancelled one today." See 2 Ala.Dig., Appeal and Error ⚏1058(2) for numerous decisions.

The judgment is affirmed.