**FIRST ALABAMA BANK OF GADS-DEN, etc., Plaintiff-Appellee,**

v.

**AETNA INSURANCE COMPANY, a corporation, Defendant-Appellant.**

No. 77-2666.

United States Court of Appeals, Fifth Circuit.

Nov. 28, 1979.

Rehearing Denied Jan. 2, 1980.

---

Thomas R. Elliott, Jr., Birmingham, Ala., for defendant-appellant.

James D. Pruett, Gadsden, Ala., for plaintiff-appellee.

Before GODBOLD, RONEY and FRANK M. JOHNSON, Jr., Circuit Judges.

GODBOLD, Circuit Judge:

First Alabama Bank, as loss payee under a mortgage clause of an Aetna policy of fire insurance, sued Aetna seeking recovery of $50,000. In a jury trial, at the close of the evidence, the district court granted a directed verdict for the Bank. We hold that the directed verdict should not have been granted and reverse.

## I. The facts.

In January, 1973, the town of Vina, Alabama, issued $145,000 of warrants to finance construction of a manufacturing plant to be leased to United Homes. The warrants were secured by a mortgage on the plant, which was held by the Bank as trustee for the bondholders. Under the terms of the trust instrument the town of Vina was required to obtain insurance for the building with standard mortgage clauses in favor of the Bank.

In June, Prewitt, an independent insurance agent, was approached by Bishop, an officer of United, who requested $100,000 in insurance coverage for the plant. Prewitt got in touch with Anderson, an underwriter for Aetna, who agreed that Aetna would cover the building—then under construction—subject to inspection.

On July 23 the $100,000 Aetna policy became effective. The policy allowed Aetna to cancel the coverage only by giving the Bank ten days' written notice of cancellation. On August 8 or 9, Anderson received the inspection report from Aetna's engineer, which led him to conclude he did not want Aetna to continue to cover the building. At no time, however, did he give the Bank or Prewitt written notice that Aetna wished to cancel.

The Bank, after receiving the Aetna policy, requested additional coverage since the value of the building was considerably more than $100,000. The Bank asked the mayor of Vina to request more coverage. Ultimately, Bishop asked Prewitt to increase Aetna's coverage. On August 21, Prewitt prepared an endorsement to the Aetna policy raising the amount of coverage to $150,000. The endorsement was not issued, however, because Anderson told Prewitt that based on the engineer's report Aetna would not increase the coverage and wanted off the risk altogether. No time limit was set for getting Aetna off, and Anderson did not issue a written notice of cancellation.

Prewitt, without notice to United, Vina, or the Bank, arranged for coverage by two other insurance carriers, California Union Insurance Co. and Foremost Insurance Co. The type and quality of the new coverage was the same as Aetna's policy, though the total coverage of the two new policies was $200,000. The new policies did not, however, contain mortgage clauses to the Bank. The risk was "bound" to California and Foremost on August 24, 1973, and on that date Prewitt called Anderson to tell him Aetna was off the coverage. Prewitt also notified Bishop of the change but the Bank was not informed.

The night of September 1–2 fire destroyed the plant. The Bank thereafter learned of the changed coverage and filed claims under all three policies. All three carriers denied liability. Aetna claimed to be off the risk, while California and Foremost asserted that the Bank was not a loss payee and that the fire resulted from arson. The Bank and United sued California and Foremost in federal court claiming $200,000, the full coverage of the two new policies (and twice the coverage of the Aetna policy). A jury found that the amount of the fire loss was $150,000. The district court entered judgment for two-thirds of the loss, or $100,000, on the basis that the Aetna policy was "other insurance" within the pro rata other insurance provisions of

the California and Foremost policies. The Bank did not appeal. Thereafter it brought this suit against Aetna for the remaining one-third of the loss. Damages were stipulated as $50,000 plus interest, and the only question was whether the Aetna policy was in effect. The district court held, as a matter of law, that there was no substitution of the new policies by an authorized agent and no ratification by the Bank of the unauthorized substitution, and granted the directed verdict for the Bank.

## II. Standard of review.

This is the standard of review of a directed verdict in this circuit:

> [T]he Court should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion.
>
> [I]f there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. . . There must be a conflict in substantial evidence to create a jury question.

*Boeing Co. v. Shipman*, 411 F.2d 365, 374–75 (CA5 1969) (en banc).

## III. Substitution and agency.

The district court's finding on substitution is as follows:

> The court is of the view that there is no issue of fact to go to the jury. The court is of the view that the evidence is substantially without dispute that on the date of the loss the Aetna policy was in force and effect as to the bank as mortgagee, the bank having not been notified

of the cancellation and the substitution of the other policies, vis-a-vis the bank, did not constitute substitution.

R. at 117.

The Aetna policy provided that Aetna could cancel by giving the Bank ten days' written notice. There was no evidence that this was done and the district court so held. The policy also provided that the insured could cancel the policy at any time. In Alabama the parties to an insurance contract may mutually agree to cancel the insurance by means other than those specified in the policy. *See, Alabama Farm Bureau Ins. Co. v. McCurry*, 336 So.2d 1109, 1112 (Ala.1976). Thus insurance coverage can be canceled by mutual action of the parties, or by unilateral action of the insured where permitted by the policy. If such cancellation were not permitted there would always be an overlap in coverage when new insurance was substituted for an existing policy.

There is no evidence that the Bank acted directly to cancel the Aetna policy. The argument advanced by Aetna is that the independent insurance agent, Prewitt, was acting as agent for the Bank when he canceled the Aetna policy and substituted the California and Foremost coverage. We construe the finding of the district court that "the substitution of the other policies, vis-a-vis the bank, did not constitute substitution" to be a finding that, as a matter of law, Prewitt was not acting as the Bank's agent when he canceled the Aetna policy and took out the new coverage.[1]

The evidence relating to Prewitt's implied authority to act for the Bank included the following:

The Bank, as Trustee under the mortgage indenture agreed that the town of Vina was to "take out and maintain in effect, or will

---

1. Alabama case law holds that "authority to an agent limited solely to the procurement of a policy does not include per se the right of the agent to cancel the policy." *Iowa Mutual Ins. Co. v. West*, 40 Ala.App. 332, 116 So.2d 388, 394 (1959) *quoting Mobile Fire & Marine Ins. Co. v. Kraft*, 36 Ala.App. 684, 63 So.2d 34 (1953). These cases are distinguishable because they involve cancellation with no re-

placement coverage. In addition, there is evidence in the present case that Prewitt's authority was not limited solely to the procurement of the initial coverage. The Alabama Court of Appeals in *Kraft, supra*, 63 So.2d at 36, noted that, under proper circumstances, an insurance policy could be canceled by an agent of the insured.

cause to be taken out and maintained in effect [specified insurance coverage]. . . Prior to the expiration of any such policy, the Town shall furnish to the Trustee, or cause to be so furnished, satisfactory evidence that such policy has been renewed or replaced by another policy. . . ."

Upon receiving the Aetna policy and learning that the coverage was substantially less than the value of the building, the Bank acted to have the coverage increased. The Bank contacted the mayor of Vina and requested that he have the policy limits raised. Bishop, who had originally dealt with Prewitt to get the Aetna policy, then called Prewitt to pass on the requirement of additional coverage.

Prewitt attempted to have the Aetna policy limits raised but was unable to do so, and the Aetna agent requested that his company be taken off the risk. Prewitt then obtained the California and Foremost coverage in the amount of $200,000, which he testified was to substitute for the Aetna policy.

Prewitt testified that the practice and custom in the insurance industry is to replace existing policies by substitution so that there is no gap or overlap in coverage. He stated that he never intended to have all three policies in effect at once. He also testified that the purpose of the ten-day notice clause was to protect the mortgagee in the event of cancellation with no replacement coverage.

When the California and Foremost policies were received it was discovered that they did not have mortgage clauses in favor of the Bank. Prewitt then acted on behalf of the Bank to try and get the clauses inserted. When the Bank sued California and Foremost, Prewitt testified on behalf of the Bank that the mortgage clauses had been agreed to originally.

At no time before the fire did Prewitt deal directly with the Bank.

Considering all the evidence under the *Boeing* standard we conclude that reasonable persons might reach different conclusions on the question of Prewitt's implied authority to act on behalf of the Bank. A jury might infer that Prewitt was, or was not, the Bank's agent and that he did, or did not, have implied authority to cancel the Aetna policy when the California and Foremost policies were issued. The Bank was not entitled to a directed verdict.

### IV. Ratification.

Aetna argues that even without a finding that Prewitt was the Bank's agent with authority to cancel the Aetna policy, the Bank by suing California and Foremost and collecting the judgment rendered against them, ratified Prewitt's cancellation of Aetna's policy. None of the material facts about "ratification" are controverted. The issue before us is whether these facts constitute ratification as a matter of law. The district court concluded that under Alabama law they did not.

The Alabama case law on ratification is sparse. The possibility of ratification of an agent's cancellation of insurance coverage is recognized in *Niagara Fire Ins. Co. v. Raden*, 87 Ala. 311, 5 So. 876 (1889). The court held, however, that accepting two other policies of insurance and filing suit on them did not constitute ratification when the new policies were not delivered to the insured until after the property was destroyed, and the insurer—a foreigner "ignorant of her legal rights"—was not informed by her insurance agent of her valid claim under the old policy and her right to refuse to accept the new policies. Thus, the court held that "a ratification made in ignorance of [material facts] can not be held to be binding." 5 So. at 878.

In two later cases the Supreme Court of Alabama seemed to move away from the idea that an agent's procurement of insurance could be ratified by acts of the insured after the property was destroyed. Specifically, in *Cowart v. Capital City Ins. Co.*, 114 Ala. 356, 22 So. 574 (1897), the court held that an insurance policy procured by an agent who was without authority to act for the insured was not ratified by the insured's filing a proof of loss and claiming payment under the policy. The court's rationale was as follows:

The loss had then occurred. The rights of the parties had become fixed. The reason of the stipulation against other insurance had ceased. His action in that regard exerted, and could exert, no influence on the conduct of the defendant in respect of the creation or continuance of the risk, for the policy had matured by the loss; it had ceased to be, except for the purpose of collection. The moral hazard [of over-insurance] had ceased to exist. These elements could not be restored by ratification. The plaintiff, discovering the existence of the first policy taken out in his name, was put in the position of determining the legal rights of the defendant and himself in respect of its collection.

*Id.* 22 So. at 576 (citations omitted). On similar facts the court later followed the same reasoning, citing *Cowart,* and found no ratification.[2]

In neither of these cases was a judgment recovered on the policies sought to be treated as ratified by the insured. Both cases also involved "overinsurance" clauses that would have resulted in all of the insurance being voided had the agent's actions been ratified. The court emphasized the inequity of any holding of ratification on those facts, saying that "[i]t would be monstrous to hold, in such case, that his insurance subsequently procured was thereby annulled." *Cowart, supra,* 22 So. at 576.

We are uncertain whether Alabama law would treat the Bank's suing California and Foremost and claiming $200,000 as ratification of the substitution of new policies for old. Arguably, in the language of *Cowart,* the Bank was merely "determining the legal rights" between itself and California and Foremost with respect to the two new policies. Also, it is clear that Aetna did not want to be sued first, encouraged the Bank to sue California and Foremost first, did not try to intervene in the suit, and hoped that the Bank would recover all of its loss from California and Foremost.

Also we are uncertain whether the Bank's acceptance of the $100,000 judgment barred it from proceeding against Aetna. If anything is certain it is that no one involved intended that there be $300,000 coverage,[3] but that is the inevitable concomitant of a judgment against Aetna for $50,000. Also, the Bank did not appeal the action of the district court in treating Aetna's policy as "other insurance" although it knew that Aetna denied coverage.

We have considered certifying this question to the Alabama Supreme Court, which has worked harmoniously with the federal courts in making available to us readily and promptly definitive holdings on uncertain questions of Alabama law. However, the uncertain question is one of two alternative theories of defense, and we do not know the course that the proceedings may take below. Presumably, if the issue here in doubt becomes determinative of the outcome of the case the district court can then certify the question to the Alabama Supreme Court before entering judgment.

REVERSED.

---

**2.** *Home Ins. Co. v. Shriner,* 235 Ala. 165, 177 So. 890 (1937).

**3.** The trust officer of the Bank thought the $145,000 bond issue was protected by only

$100,000 of (Aetna) coverage. When he found out about the California and Foremost policies he referred to them as a "God-send." R. 20–21.