SNEDICOR *v.* CITIZENS' INSURANCE CO.

|106   83|
|145  ²431|

1. FIRE INSURANCE—CANCELLATION OF POLICY—AUTHORITY OF
BROKER.

   Authority to procure insurance does not imply authority to
   receive notice of cancellation of the policy.

2. SAME.

   An insurance broker agreed to place a certain amount of fire
   insurance for plaintiff at a specified rate. The policies were
   accordingly procured, and delivered to plaintiff. One of the
   companies thereafter reduced the amount of its policy, and
   the broker thereupon obtained a policy from defendant, and
   delivered it to plaintiff, taking up the canceled policy.
   *Held,* that notice of cancellation given to the broker by
   defendant, with knowledge of the circumstances, did not
   bind plaintiff.

Error to Wayne; Frazer, J. Submitted June 6, 1895.
Decided July 2, 1895.

*Assumpsit* by Clarkson M. Snedicor against the Citizens' Insurance Company on a fire-insurance policy.
From a judgment for plaintiff, defendant brings error.
Affirmed.

*Wilkinson & Post,* for appellant.

*Charles S. McDonald (Elbridge F. Bacon,* of counsel), for
appellee.

LONG, J. This is an action brought by the plaintiff
against the defendant to recover on a policy of insurance
issued by the defendant to the plaintiff. The defendant
pleaded the general issue, and gave notice that the policy
was canceled before the fire. The case was tried before
a jury, and a verdict directed by the circuit court in favor
of the plaintiff for $1,598.02.

It appears from the undisputed testimony in the case
that on the 9th day of March, 1893, defendant issued to

plaintiff its policy of insurance, by which it insured the
plaintiff's stock of boots and shoes, etc., in the city of
Detroit, in the sum of $1,500, for one year from the date
of the policy. On March 26, 1893, the property insured
was totally destroyed by fire. Proofs of loss were duly
made and delivered to the insurance company, and pay-
ment of the amount of the policy demanded, which was
refused by the insurance company, on the ground that
the policy had been canceled. It also appears that credit
was given for the premium, and that the amount of the
premium had not been paid at the time of the fire, but
was tendered shortly afterwards. On the trial the
defense as to the want of the payment of the premium
by plaintiff was abandoned by the defendant, and is not
insisted upon in this court. It was not disputed that
the property insured was a total loss, and that the value
of the property burned was in the neighborhood of
$90,000, and that the total insurance on the property
amounted to $45,500.

At the time the policy was issued, John W. Fox, who
signed the policy, was one of the agents of defendant
in the city of Detroit, but he testifies that he had no per-
sonal dealings with the plaintiff, and never saw him until
after the fire. One Arthur Langguth, who was a real
estate and insurance agent, had an office in the same
building in which Mr. Fox had his office. He did not
represent any companies himself, but did his insurance
business through other agents; that is, he solicited insur-
ance, and got it placed in different companies, where-
ever he could. A short time before this policy was issued,
Langguth went to the plaintiff, and made arrangements
with him to place $10,000 worth of fire insurance, at $1.05
per $100. At first he procured $5,000 in the Manchester, of
England, and $5,000 in the Palatine, of Manchester. The
Manchester company reduced its policy on plaintiff's
stock to $2,500, and Langguth went to defendant's agent,
who issued and delivered to Langguth two policies, one
in the Grand Rapids company for $1,000, and the policy

in question for $1,500. On the day these policies were issued, Langguth delivered them to the plaintiff, and took up the policy which had been canceled in the Manchester.

About the 17th day of March, 1893, John W. Fox, the defendant's agent, received the following telegram:

"PITTSBURG, PA., March 17, 1893.

"*John W. Fox:*

"Cancel 2130.   Full line assured through agency.

"CITIZENS' INSURANCE COMPANY."

On the 18th day of March, Fox handed the telegram to Langguth, and asked him if he would get the policy back, and he said he would. It is not claimed by the defendant that the plaintiff ever had any knowlege of this telegram, or of the action of the company in ordering the policy canceled, until after the fire. Langguth testifies that he told Mr. Snedicor that the policy was canceled the morning after the fire, and that he had not notified him before that. Mr. Fox testifies that the first conversation he had with Mr. Snedicor was on the morning after the fire, and that he then told him that the policy was canceled, and that that was the first time he had notified him of the cancellation.

The defendant assigns two errors: *First*, that the court should have instructed the jury "that, under the evidence, the policy in suit was canceled more than five days before the fire, and was not in force at the time of the fire, and that the plaintiff was not entitled to recover;" and, *second*, that the court erred in directing a verdict for the plaintiff.

The only question raised is whether the notice of cancellation of the policy given to Langguth was a sufficient notice, under the facts, to bind the plaintiff. If the notice had been given to the plaintiff, it is conceded that it would have been sufficient to cancel the policy, and no recovery could be had. We do not think, however, that Langguth sustained such a relation to the plaintiff as to bind the plaintiff by the notice given. Mr. Fox, the agent of the company at Detroit, knew the relation between

plaintiff and Langguth.   He knew that Langguth was an insurance solicitor, and that he made the application in the present case for the plaintiff, and that the policy had been delivered by Langguth to the plaintiff, and that, at the time of notice of cancellation, it was in the plaintiff's possession.   He made no effort to notify the plaintiff of the cancellation except to state to Langguth that he had received the telegram from the company to cancel it.   By its terms, the policy provided that it could be canceled at any time at the request of the insured, or by the company by giving five days' notice.   This notice was to be given to the insured or to some one authorized to receive it.   Langguth was not the general agent of the plaintiff, and there were no business relations between them, except in the procuring of this policy in place of the one that had before existed.   The mere fact that Langguth procured the policy for plaintiff would not make him his agent to receive notice of the cancellation of the policy. In *Buick* v. *Insurance Co.*, 103 Mich. 75, 79, it was said:

"It is unnecessary to cite authorities to the proposition that authority to procure insurance does not imply authority to consent to cancellation, so as to bind the insured."

See, also, *Grace* v. *Insurance Co.*, 109 U. S. 278; *Body* v. *Insurance Co.*, 63 Wis. 157; *East Texas Fire Ins. Co.* v. *Blum*, 76 Tex. 653.

Counsel for defendant contend that the case is ruled by *Hartford Fire Ins. Co.* v. *Reynolds*, 36 Mich. 502. The present case differs essentially from that.   In that case it appears that Kirchhofer, the agent of the company, had an arrangement with Reynolds by which Reynolds, in consideration of dealing with Kirchhofer, was to have an abatement of 5 per cent. out of the premiums, to be allowed out of Kirchhofer's commissions; that there was a further arrangement with Kirchhofer by which he looked after the insurance for Reynolds, and saw to the renewal of the policies; that Reynolds left the care and custody of them with Kirchhofer, and never informed

himself, except through Kirchhofer, concerning the risks; also, that Reynolds had an account with Kirchhofer for the premiums, and paid them at such times as Kirchhofer needed them. It was also left with Kirchhofer to decide as to the responsibility of the companies, and where the insurance should be placed. It also appeared that the policy in question was ordered by the company to be canceled in May, 1874, and was returned to it by Kirchhofer, who had countersigned the policy, but had kept it in his custody for Reynolds. The fire occurred in August, and at the time of the fire the company had the policy in its possession. Under these facts, it was held by the court that Kirchhofer was the agent of Reynolds to receive notice of the cancellation of the policy, and that notice to him was binding upon Reynolds.

The judgment below must be affirmed.

The other Justices concurred.