### CITY OF NEW YORK INS. CO. v. JORDAN et al.

(Circuit Court of Appeals, Fifth Circuit. November 2, 1922.)

#### No. 3930.

**1. Insurance ⬥⇒238(2)—Agent for insured held not authorized to cancel policy.**

An agent to procure insurance is not authorized to cancel it unless that authority is plainly conferred, and it is not plainly conferred by a request by the owner of property already insured that it be kept insured and to keep him insured at any time any company canceled a policy.

**2. Insurance ⬥⇒238(2)—Cancellation of policy and issuance of substitute policy by agents held unauthorized.**

A firm of agents for a number of insurance companies issued a policy to plaintiffs containing a provision that it might be canceled at any time by insured and by the company on five days' notice to insured. On receipt of instructions by the company to cancel the policy the agents assumed to cancel it without notice to plaintiffs, and also without their knowledge issued a substitute policy in defendant company, which was not delivered nor known to plaintiffs until after the property had been destroyed. *Held*, that neither the fact that plaintiffs had requested the agents to keep them insured in case any policy was canceled by the company, nor that they had on one occasion accepted a policy so substituted, authorized the agents to cancel the policy on their behalf, and since it was not legally canceled by the company the first policy was still in force at the time of the fire, and defendant's policy did not become effective.

In Error to the District Court of the United States for the Middle District of Alabama; Henry D. Clayton, Judge.

Action at law by S. L. Jordan and others, doing business as the Jordan Milling Company, against the City of New York Insurance Company. Judgment for plaintiffs, and defendant brings error. Reversed.

B. P. Crum, of Montgomery, Ala. (Steiner, Crum & Weil, of Montgomery, Ala., on the brief), for plaintiff in error.

Wiley C. Hill and Richard T. Rives, both of Montgomery, Ala. (Hill, Hill, Whiting & Thomas, of Montgomery, Ala., on the brief), for defendants in error.

---

Before WALKER, BRYAN, and KING, Circuit Judges.

WALKER, Circuit Judge. This was an action by the defendants in error (herein called plaintiffs) on an instrument purporting to be a policy of fire insurance, issued by the plaintiff in error (herein called defendant) and covering certain machinery while contained in a building located in a suburb of the city of Montgomery, Ala., and which was occupied by the plaintiffs. There was a judgment in favor of the plaintiffs, following the giving of a charge to the jury to find a verdict in their favor. That ruling is complained of.

The instrument sued on was a policy of the standard form, and contained the following:

"This policy shall be canceled at any time at the request of the insured, or by the company by giving five days' notice of such cancellation. If this policy shall be canceled as hereinbefore provided, or become void or cease, the premium having been actually paid, the unearned portion shall be returned on surrender of this policy or last renewal, this company retaining the customary short rate, except that, when this policy is canceled by this company by giving notice, it shall retain only the pro rata premium."

It came into existence under the following circumstances: Early in July, 1921, Warren & Son, who were local agents for the defendant and other insurance companies, including the Rhode Island Insurance Company, issued and delivered to the plaintiffs a policy of the Rhode Island Company covering the above-mentioned machinery. That policy also contained the above-quoted provision. On the morning of Saturday, August 27, 1921, Warren & Son, after the receipt by them of written notice from the Rhode Island Company to cancel its policy, made out and signed the instrument sued on, carried it to the stamping office in Montgomery, which was maintained by insurance companies, to which policies when issued were carried to be stamped and notice sent to the issuing company, mailed to the defendant on Saturday morning a daily report on which was noted the policy sued on, and made a charge on their books against the Rhode Island Company of the amount of the unearned premium on its policy. The fire in question occurred that Saturday night. The plaintiffs had no notice of any cancellation or attempted cancellation of the Rhode Island policy, or of a purpose or desire of that company to cancel its policy, and were not informed of the policy sued on, until Monday morning after the fire, when one of the plaintiffs, after being informed of what Warren & Son had done before the fire, handed the Rhode Island policy to Warren & Son, and then received from them the instrument sued on. No premium was paid on either of those policies until after the fire. The defendant, on being informed of the facts, offered to return the amount of premium paid to it, and denied liability under the instrument sued on.

In behalf of the plaintiffs it is contended that Warren & Son were their agents, vested with authority to cancel the Rhode Island policy and to substitute another policy therefor. That contention is based on the testimony of two witnesses, S. L. Jordan, one of the plaintiffs, and Ernest Warren, a member of the firm of Warren & Son. Jordan tes-

tified to the following effect: Before the issuance of the Rhode Island Company policy, plaintiffs had a policy on the same property in a company which was referred to as the New Zealand Company. On or about July 7, 1921, Ernest Warren came out to witness' place, informed witness that he had instructions to cancel the New Zealand policy, and handed to witness the policy in the Rhode Island Company. Witness remarked to Warren, "Well, you protected me all right;" to which Warren replied, "Yes; that is what we are in business for, to protect our clients." Witness then said, "Well, it doesn't seem that any insurance companies want to carry risks on the mill business." Witness then told Warren to "be sure to look after my insurance and keep me insured." On cross-examination witness stated: When Warren brought witness the Rhode Island policy, witness reminded Warren to keep him protected, and Warren replied that that was what he was in business for. Witness told Warren that, if any of the policies were canceled, he wanted him (Warren) to keep them insured.

The following is the part of Warren's testimony that can have any bearing on the question of the authority of his firm as agents of the plaintiffs: On Monday morning after the fire witness handed to Mr. Jordan the policy sued on, and then received from Mr. Jordan the Rhode Island policy. Previous to that witness had been instructed by Mr. Jordan, at any time any company canceled a policy, to keep him protected; and, on being asked by plaintiffs' counsel, "Now, had your firm ever before that canceled a policy without notice to him and reinsured him?" answered: "Yes, sir, I think about three months before that we had a policy—I am not exactly certain of the company; I think it was the New Zealand—which was canceled, and I carried the new policy out there, the Rhode Island policy." Witness canceled the New Zealand policy to the plaintiffs without notice to them, and issued another policy in lieu of it. When the notice came asking a cancellation of the New Zealand policy to the plaintiffs, witness just went ahead and rewrote it in another company, and carried it out to Mr. Jordan, and took up the canceled policy, and Jordan told witness to always keep him insured, and protected by insurance.

According to Jordan's testimony the authority conferred on Warren & Son was to keep the plaintiffs protected by insurance, to keep them insured if any of their policies were canceled. Warren's testimony was to the same effect. In our opinion an instruction by the principals to the agents to keep the principals insured, to keep the principals protected at any time any company canceled a policy, falls short of authorizing the agents, by their voluntary act, and without the consent of the insured, to effect a cancellation of a policy or policies held by the latter. Under the terms of the Rhode Island Insurance Company policy, it could not be canceled by that company, except by giving five days' notice to the insured. Grace v. American Central Ins. Co., 109 U. S. 278, 3 Sup. Ct. 207, 27 L. Ed. 932. The plaintiffs had no such notice, and, until after the fire, did nothing indicating that they consented to a cancellation. The authority conferred provided for the contingency of a policy to the plaintiffs being canceled, of their property becoming unprotected by insurance unless a new policy was issued. It

did not provide for the agents terminating a policy before it expired or was canceled pursuant to its terms and substituting therefor another policy. It was not disclosed that it was contemplated that the Rhode Island policy could be canceled, otherwise than as therein provided—"at any time at the request of the insured, or by the company by giving five days' notice of such cancellation."

[1] This is not the case of an agent receiving general authority to look after the insurance matters of his principal, to accept and waive notices to which the principal is entitled, to cancel outstanding policies, and to issue or procure the issuance of new policies in place of outstanding ones without communicating with the principal. The agency created was to procure insurance in the contingencies indicated. An agent to procure insurance is without authority to cancel it, unless that authority is plainly and unequivocally conferred. Insurance Co. v. Forcheimer, 86 Ala. 541, 5 South. 870; Artificial Ice Co. v. Reciprocal Exchange, 192 Iowa, 1133, 184 N. W. 756. To say the least, authority of an agent to terminate existing insurance is not plainly conferred by a request of the owner of property that property already insured be kept insured—to keep the owner protected "at any time any company canceled a policy." The evidence indicates the absence of any intention to empower the agents by their voluntary act to create a situation calling for new insurance. The extent of the authority of the agents is determined by the terms of the request made by the principals. The fact that there had been a single instance of the principals accepting a policy issued by the agents in place of one which was canceled without notice to the principals cannot properly have the effect of giving the request or direction a meaning different from that expressed by its language.

[2] Confessedly Warren & Son were not authorized to place additional insurance on the property covered by the Rhode Island policy, and they did not undertake to do so. A result of their lack of authority to cancel the Rhode Island policy, and, while it was uncanceled, to accept for the plaintiffs in lieu thereof the policy sued on, and of the absence of any ratification by the plaintiffs prior to the fire, was that when the fire occurred the Rhode Island Company policy was still in force and the policy sued on had not attached. What occurred after the fire between Warren & Son and the plaintiffs did not have the effect of making the instrument sued on binding on the defendant.

"An agent of an insurance company has no authority to insure property already destroyed; and a policy written and intended as a substitute for a subsisting policy in another company, but not delivered, and of which the assured has no knowledge until after the property is destroyed by fire, is not a valid contract of insurance." Stebbins v. Insurance Co., 60 N. H. 65; Kerr v. Milwaukee Mechanics' Ins. Co., 117 Fed. 442, 54 C. C. A. 616.

It was suggested in argument that, even if the request or direction to Warren & Son had the meaning contended for in behalf of the plaintiffs, the instrument sued on was voidable at the election of the defendant because of the double agency exercised by Warren & Son in the transaction in question, wherein they acted as agents for different principals having palpably conflicting interests, the duty to one of the

principals requiring that a risk proposed to be incurred be scrutinized, and declined if deemed undesirable, while the undertaking in behalf of the other principal was to keep protected by insurance property which the agents had reason to infer was considered in insurance circles not to be a desirable risk. Insurance Companies v. Raden, 87 Ala. 311, 5 South. 876, 13 Am. St. Rep. 36; 21 R. C. L. 827 et seq. This suggestion need not be passed on, as, for reasons above indicated, the conclusion is that the evidence adduced did not show that the instrument sued on ever became effective as a contract binding on the defendant.

Because of the error in the above-mentioned ruling, the judgment is reversed.