**FILKINS v. STATE ASSURANCE, Limited.**

**In re U. S. PULP PRODUCTS CORPORATION.**

(District Court, W. D. New York. October 23, 1925.)

No. 2547.

**1. Trial ⬤⟿177—Where both parties move for peremptory instruction, question is for court.**

In suit on fire policy, with both parties moving for a peremptory direction of a verdict, and no request being made that issue of whether person writing policies was agent or broker for plaintiff be submitted to jury, scope of his employment was for trial court to determine.

**2. Insurance ⬤⟿101—Facts held not to constitute person a general agent of insured with power to procure insurance generally on its plant.**

Insured's instruction given insurance agent about attaching a new clause to existing policies and written authority to secure a more favorable rate *held* not to constitute him a general agent, with power to procure insurance generally on plant of insured, where in each case employment was for a particular end; thereby creating no implication of a general power to manage and transact insurance business of insured.

**3. Insurance ⬤⟿229(4)—Neither agent nor insuror had authority to cancel insurance policies without first giving insured notice specified in contract.**

Where authority of an insurance agent was limited to increasing existing policies of insured and to procure an additional policy, no authority to request a cancellation at a future time was thereby implied, and retention of policies by such agent conferred no right upon him or insurer to cancel without first giving insured notice specified in contract.

**4. Insurance ⬤⟿229(4)—Insurer could not assume from surrender of policies agent could cancel.**

Insurer had no right, from surrender of policies by agent, to assume that scope of his agency included right of cancellation.

**5. Insurance ⬤⟿136(2)—Trustee in bankruptcy of insured held entitled to recover on fire policy, though it had not actually been delivered to insured.**

Trustee in bankruptcy of insured *held* entitled to recover on fire policy, notwithstanding that it had not actually been delivered to insured, where it was in agent's possession for such delivery, and he had paid the premium and extended customary credit to insured; policy being thereby constructively delivered to insured.

At Law. Action by William M. Filkins, as trustee in bankruptcy of the estate of the United States Pulp Products Corporation, against the State Assurance, Limited. Verdict for plaintiff. On motion to set verdict aside and for new trial. Motion denied.

Chapman, Newell & Crane, of Syracuse, N. Y., for plaintiff.

Bond, Schoeneck & King, of Syracuse, N. Y. (Edward L. Robertson, of Syracuse, N. Y., of counsel), for defendant.

HAZEL, District Judge. [1] Upon carefully considering the proofs, I am satisfied that direction of verdict in favor of plaintiff was a proper disposition of the case. Concededly no question of fact was presented, and each side moved for a peremptory direction of a verdict. No request was made that the issue of whether Warren was agent or broker for plaintiff be submitted to the jury, and accordingly the scope of his employment was for the trial court to determine. Langdon v. Taylor, 180 F. 385, 103 C. C. A. 531; Williams v. Vreeland, 250 U. S. 295, 39 S. Ct. 438, 63 L. Ed. 989, 3 A. L. R. 1038.

The evidence discloses that three fire insurance policies had been written and delivered by defendant amounting to $9,000, covering the plant and property at Newark, N. Y., of the United States Pulp Products Corporation of which plaintiff is trustee in bankruptcy. The separate premiums on the policies were paid by Warren, who, it is claimed, was a broker and general agent of the defendant company, but who, on the other hand, is claimed by defendant to have been the general agent or broker for the insured. Warren extended credit for the premiums to the insured and afterwards delivered a bill therefor, which, however, the insured did not pay. The plant was destroyed by fire on September 15, 1923, and a short time prior thereto the policies were canceled by defendant on request of Warren. The policies each contained a standard canceling clause, which became effective on request by the insured for cancellation, and terminated on the part of the company upon first giving five days' written notice to the insured. The policies were terminated without giving such notice. No request was made by the insured for their cancellation, unless the act of its agent Warren in requesting cancellation was a compliance with the contract. It depends upon the scope of his agency.

The evidence shows that Warren was a general insurance agent at Newark, representing various fire insurance companies with the customary authority to issue policies. His wife was also agent for different fire insurance companies, and both maintained offices together; the entire business being carried on in the name of the husband. Warren also had maintained an insurance agency at Rochester, N. Y., and acted as defendant's agent in the procurement and issuance

of fire insurance policies. While conducting such agency, he issued two policies for $1,000 each, covering the plant of the products company. In 1902 he carried a number of fire policies for the bankrupt company in different companies. At such time there were policies on the plant issued by other agents. In the latter part of 1922 all insurance that had been written by Warren was placed with companies of which either he or his wife were the agents, and for the premiums Warren rendered bills. Defendant does not claim that Warren was insurance broker for the products company at this time, and concedes that the relations were simply those commonly existing between an insured and an agent representing companies.

Prior thereto, in 1921, Warren sold his agency for defendant to one Foley, and his connection as its agent ceased. Afterwards Warren was asked by the insured to increase the two $1,000 policies to two $2,000 each. The products company claims that it was unaware of Warren's discontinuance as agent for defendant, and Warren testified that he did not inform it of the change. The increase of the two policies was approved by Moore, who had become president and manager of the insured. There was conversation between Warren and Moore about procuring additional insurance, and Warren was instructed to prepare a particular form or additional clause for all the policies. Warren agreed to prepare the suggested form and do what was necessary to be done to include it in the policies in force. For this purpose the two policies were delivered to him, but he omitted to redeliver them to the insured, and kept them in his custody. The bookkeeper for the insured subsequently inquired of him why the policies were not redelivered, and he replied that he was holding them until he saw Mr. Moore. But there was no further communication with Moore in relation thereto. The witness Fox, who was secretary of the insured, testified that he talked with Warren about obtaining better rates in the fall of 1922, and Warren replied that he thought a more favorable rate could be obtained; that he communicated with the Board of Underwriters and asked and received written authority to represent the insured in the matter.

[2] Neither the instructions given Warren about attaching a new clause to the existing policies, nor the written authority to secure a more favorable rate, constitute him, in my opinion, a general agent with power to procure insurance generally on the plant. In each instance the employment was for a particular end, and a general power to manage and transact the insurance business of the insured, or vesting in him unqualified rights to procure insurance, was not thereby implied. There also was talk between Moore and Warren regarding the placement of additional insurance upon the plant in a large amount, and, acting thereon, the policy of $5,000 in controversy was placed with the defendant company·

The evidence shows that all three policies were delivered to Warren in March, 1923, and that they remained in his custody until August 31, 1923, when he sent them to Foley, the agent of the defendant, with instructions to cancel them. At this time the premiums had not been paid Warren, though he had requested payment of Moore and of Fox. The payment of the bills rendered by him for advances on policies, owing to the financial embarrassment of insured, were delayed. There were conversations between Warren and Fox regarding proposed cancellations to obtain proportionate rebates but Fox was opposed to cancellation and sent the note of the insured to Warren, who, however, refused to accept it, on the ground that it might be considered as payment and interfere with his proposed cancellations. In July, 1923, Warren told Fox that, unless he received payment of the premiums advanced by him, he would cancel the policies and obtain the usual rebate for short term insurance, and said that defendant would cancel policies for its agents if they did not get their money. Fox asked for further delay, and paid $50, his personal check, to apply upon the account. Fox denies that Warren stated that he would cancel the policies, but that he said that, if business did not improve, he could cancel them and in that way obtain some of his advances. In August, 1923, Warren again suggested canceling to Fox, but again Fox asked for delay, saying that shortly there would be a meeting of the directors and provision then made for paying him, and still later there was talk about Warren taking a mortgage on the plant for security, contingent upon the consent of a creditor. When such consent was not given, Warren procured the cancellations by the defendant, without notice being given to the insured.

[3] Both sides concede that the material question to be decided is whether Warren had general authority to obtain the fire insurance in question, and, if so, did their surrender confer on defendant the right of cancellation without the statutory notice. De-

fendant contends that, even though the two earlier policies came into possession of Warren for a specific purpose, he nevertheless was agent or broker for the insured, and, in keeping them with the knowledge of the products company, to protect himself, gave him the right to request cancellation. I do not agree with this contention. It is true that in Standard Oil Co. v. Triumph Ins. Co., 64 N. Y 89, upon which defendant places reliance, it is held that one employed to obtain insurance may be regarded by the insurance company as having power to request cancellation. But in that case the facts were held to have conclusively established that the agents procuring the insurance were clothed with the general rights in relation thereto; in short, that they were the general agents for placing and keeping upon the property of the insured large amounts of insurance, and therefore the court held that the general agent had the right to request cancellation in the same manner as if such request had been made by the insured. In Hermann v. Niagara Fire Ins. Co., 100 N. Y. 411, 3 N. E. 341, 53 Am. Rep. 197, however, that case was explained, and it was clearly decided that the authority of a broker or agent employed to procure fire insurance is terminated on its procurement, unless the agent or broker has general authority to place and manage insurance on its principal's property. The conversations between Warren and Moore with relation to changing the form of policies and placing additional insurance is not thought to have brought this case into the latter class, since in each instance the instructions were specific as to what was to be done. It does not disclose any general authority to represent the insured in all its insurance matters, but rather indicates a limited authority to increase the $1,000 policies and to procure an additional policy of $5,000. No authority to request a cancellation at a future time is thereby implied. The retention of the policies by Warren, in view of the restricted scope of his agency, conferred no right upon him or upon the defendant to cancel without first giving the insured the notice specified in the contract. Plaintiff contends that the insured was unaware of the discontinuance of Warren's agency for the defendant, but, in my view of the evidence, it is unnecessary to decide whether Warren at such time may be considered to have been the agent of defendant.

[4, 5] The refusal to grant a new trial herein is based solely upon the ground that the evidence in its entirety vested Warren with specific authority only to procure insurance on the plant, to increase the two earlier policies, and specifically procure an additional policy of $5,000, and defendant had no right, from the surrender of the policies, to assume that the scope of his agency included the right of cancellation. Crown Point, etc., v. Ætna Ins. Co., 127 N. Y. 608, 28 N. E. 653, 14 L. R. A. 147. It is true the $5,000 policy had not actually been delivered to the insured, but, since Warren had paid the premium and extended customary credit to the insured, a custom of which defendant, no doubt, was aware, its nondelivery to the insured does not bar the right to recover under it (El Dia Ins. Co. v. Sinclair, 228 F. 833, 143 C. C. A. 231), for the policy was, I think, constructively delivered to the insured. This principle finds support in Healy v. Ins. Co. 50 App. Div. 327, 63 N. Y. S. 1055, and Yoshimi v. Fidelity Fire Ins. Co., 99 App. Div. 69, 91 N. Y. S. 393, and numerous other adjudications found in plaintiff's brief. The authorities stressed in the defendant's brief relate, in the main, to different facts and circumstances and to conclusions by the courts that a general authority was vested in the agents or brokers of the insured—a scope of general authority which conferred the right to surrender the policy and ask for its cancellation. If there were apparent grounds for believing that Warren had such right from his procuring the insurance and having possession of the policies, they were not caused by the insured. See Edwards v. Dooley, 120 N. Y. 540, 24 N. E. 827.

My conclusion is that the policies were canceled irregularly and in disregard of the terms providing for giving five days' notice to the insured.

The defendant's motion to set aside the verdict and for a new trial is denied.