## KOBIC *v.* REED.

1. FRAUDULENT CONVEYANCES — BULK SALES ACT — CREDITORS OF SELLER MAY INVOKE ACT.

    Where a bill of sale for a stock of goods ran to a husband and wife, and he executed a release to her of his interest therein without complying with the bulk sales act, his creditors could, in a proper proceeding, invoke said act, although only part of stock was sold.

2. SAME—CREDITOR OF SELLER MUST BE IN POSITION TO INVOKE ACT.

    Where the sale of a husband's interest in a stock of goods to his wife was valid as between them, a creditor of the husband must be in a position to question it before he could invoke the bulk sales act.

---

¹Fraudulent Conveyances, 27 C. J. § 890; ²Id., 27 C. J. § 902; 39 L. R. A. (N. S.) 374; L. R. A. 1916B, 974; 12 R. C. L. 529; 2 R. C. L. Supp. 1448.

3. SAME—BULK SALES ACT MAY BE INVOKED BY GARNISHMENT AND
PROCEEDINGS IN EQUITY—ATTACHMENT.
Both garnishment proceedings and proceedings in equity
are recognized as appropriate to invoke the bulk sales act;
if attachment proceedings are appropriate, a question not
decided, they must be valid.

4. ATTACHMENT—PROCESS—SUBSTITUTED SERVICE.
Where a writ of attachment was not served on the de-
fendant personally, and substituted service was not made
until the return day, the judgment and execution thereon
were void, and would not defeat right to recover in an
action for conversion; the law requiring that substituted
service be made at least six days before the return day.

5. CONVERSION—ATTACHMENT—TRIAL—INSTRUCTIONS.
In an action by a wife against a creditor of her husband
and the officers for the conversion of goods sold on void
execution, where defendants claimed that the husband
sold his interest in said goods to the wife in fraud of his
creditors and invoked the bulk sales act, an instruction
by the trial judge that if the husband had transferred
property to his wife to defraud creditors she could not re-
cover the value of the property so transferred was as
favorable to defendants as they were entitled to.

6. SAME—EVIDENCE—PRICE GOODS SOLD FOR AT PUBLIC AUCTION
ADMISSIBLE ON QUESTION OF VALUE.
In an action for the conversion of goods sold on void ex-
ecution, evidence of what they were sold for at public
auction is admissible on the question of value.

7. SAME—TRIAL—EVIDENCE.
Where, in an action for the conversion of goods sold on
void execution, the papers in connection with the execu-
tion proceedings were all received in evidence, from which
it appeared what they were sold for at public auction, it
cannot be said that defendants were refused permission
to show that fact because the defendant, who bought them,
was not permitted to tell what he paid for them.

8. SAME — EVIDENCE AS TO WHAT GOODS SOLD FOR LATER INAD-
MISSIBLE IN ABSENCE OF LAYING PROPER FOUNDATION THEREFOR.
In said action, in the absence of testimony showing that

³Fraudulent Conveyances, 27 C. J. §§ 898, 899, 901; ⁴Attachment,
6 C. J. § 1115; ⁵Appeal and Error, 4 C. J. § 3013; ⁶Evidence, 22
C. J. § 142; ⁷Appeal and Error, 4 C. J. § 2662; 26 R. C. L. 1148
*et seq.*

the goods were cared for in the interim and that prices did not fluctuate, it was not reversible error to refuse testimony as to what they sold for some two months later.

Error to Cass; Warner (Glenn E.), J.   Submitted April 6, 1928.   (Docket No. 64.)   Decided June 4, 1928.

Case by Antonina Kobic against Frank Reed and others for the conversion of a stock of goods.   Judgment for plaintiff.   Defendants bring error.   Affirmed.

*Asa K. Hayden (Carl D. Mosier, of counsel), for appellants.*

*Walter C. Jones (Louis V. Harmon, of counsel), for appellee.*

FELLOWS, J.   Plaintiff brought this action to recover for the conversion of a stock of goods and fixtures located in a store building owned by defendant Reed in the city of Dowagiac.   Reed instituted attachment proceedings in justice's court against plaintiff's husband, and under the writ of attachment seized the entire stock and the fixtures and later sold them on execution.   The two other defendants were the officers who executed the writs.   Plaintiff claims to have paid for and to have been the owner of the entire business; a portion of the stock was purchased in South Bend, Indiana, and the bill of sale therefor ran to her and her husband; he, however, had executed a release to her of all his interest under the bill of sale.   Plaintiff recovered a substantial judgment which defendants here review.

At the close of plaintiff's case and again at the close of all the testimony, defendants' counsel moved for a directed verdict on the ground that the sale by the husband to the plaintiff was not made in compliance

with the bulk sales act (2 Comp. Laws 1915, § 6346 *et seq.*), and hence was void. Both motions were overruled and present the first subject discussed in the briefs. The trial judge committed no error in these rulings. Plaintiff's testimony tended to show that she bought all the property involved and herself paid the entire consideration. She claims that the release executed by her husband to her was but evidence of a right she already had and which had been clouded by the insertion of both names in the bill of sale. The bill of sale, of course, tended to show that both she and her husband were owners of that portion of the stock covered by it. As between plaintiff and her husband, the release and the transfer of the property to her was valid. Creditors of her husband could in a proper proceeding invoke the bulk sales act, although her husband transferred to her but a half interest in the property. *Watkins* v. *Angus*, 241 Mich. 690. But the sale being valid as between plaintiff's husband and herself, defendant Reed as a creditor of the husband must be in a position to question it before he can invoke the provisions of the bulk sales act. This court has recognized both garnishment proceedings and proceedings in equity as appropriate for this purpose. See *Coffey* v. *McGahey*, 181 Mich. 225 (Ann. Cas. 1916C, 923), where the matter is discussed at length. In some States attachment proceedings are recognized as appropriate, but such proceedings have not been used in this State. If attachment proceedings are appropriate, a question we do not decide, it would require valid attachment proceedings, while here the attachment proceedings were invalid and the judgment rendered in them and under which the sale was made was a nullity. The writ of attachment was dated December 2, 1926; it was returnable December 13th. It was not served on the defendant personally; substituted service was not made until the return day, December 13th. Whether the service is personal or

substituted, the writ must be served at least six days before the return day; the judgment and the execution issued thereon were void; they did not defeat plaintiff's right of recovery in this case. *Tunningly* v. *Butcher*, 106 Mich. 35; *Grand Haven Military Club* v. *Mulholland*, 170 Mich. 592. The judgment and execution being void, no proceedings in garnishment or in equity having been brought, it is difficult to perceive what right defendants had to seize the property of the plaintiff and sell it to satisfy an indebtedness of her husband. The trial judge submitted to the jury the question of whether the husband had transferred property to his wife to defraud creditors, and charged them that if he had done so she could not recover the value of the property so transferred. This was as favorable to defendants as they were entitled to upon the facts appearing in the record.

Defendants insist that they were refused permission to show what the property sold for on the execution sale, at public auction, and assign error thereon. Evidence of what the property was sold for at public auction is admissible on the question of value, and if defendants were refused the right to make such showing the case must be reversed and a new trial granted. *Davis* v. *Zimmerman*, 40 Mich. 24; *Dyer* v. *Rosenthal*, 45 Mich. 588; *Hutchinson* v. *Poyer*, 78 Mich. 337; *Harmon* v. *Walker*, 131 Mich. 540. But we do not think the record shows that defendants were refused permission to make such showing. When defendant Reed was on the stand, he testified that he bought the stock at the execution sale; an attempt to prove what he paid for it was met by the suggestion by the court that the record would be better evidence. Later the justice of the peace in control of the docket and papers was called by the defendant and the docket and all the papers in connection with the attachment were offered and received in evidence. Among the papers so

offered, and it was also separately offered and received, was Exhibit D, the execution with the return of the officer indorsed thereon, which appears in the record and which shows that the property was sold at public auction for $450. The trial judge held, and properly so, as we have pointed out, that the attachment proceedings were invalid, but nowhere in the record was the attachment proceedings or any part of them withdrawn from the case or stricken out by the court. If defendants' counsel did not make use of this return and press the value as fixed by a public auction upon the jury, they have only themselves to blame. The appraisal was likewise in evidence and could have been used by defendants' counsel. It was, however, of little value, in view of the testimony of the appraiser that he took the prices from some one else and his concluding testimony:

"*Q.* Then the prices and the totals were not your judgment?

"*A.* No, sir."

In the absence of testimony showing that the stock was cared for in the interim and that prices did not fluctuate, it was not reversible error to refuse testimony as to what the stock sold for some two months later.

We do not agree with defendants' counsel that the verdict was against the weight of the evidence. There being no reversible error on the record, the judgment will stand affirmed.

FEAD, C. J., and NORTH, WIEST, CLARK, MCDONALD, POTTER, and SHARPE, JJ., concurred.