SPANN v. COMMERCIAL STANDARD INS.
CO. OF DALLAS, TEX.

No. 10380.

Circuit Court of Appeals, Eighth Circuit.

March 23, 1936.

Melbourne M. Martin, of Little Rock, Ark. (S. S. Jefferies, of Little Rock, Ark., on the brief), for appellant.

Henry Donham, of Little Rock, Ark. (Martin K. Fulk and Pat Mehaffy, both of Little Rock, Ark., on the brief), for appellee.

Before STONE, SANBORN, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

Appeal from a judgment entered upon a verdict directed for the defendant in an action brought by the appellant (plaintiff) upon a policy of Public Liability and Property Damage Insurance issued by the defendant company to one Ray Worley and others on a motortruck. The appellant in this case, Spann, had secured a judgment against Worley, the assured, in the Circuit Court of Pulaski county, Ark., on April 23, 1934, for damages resulting from the negligent driving of said truck at the city of Little Rock, Ark., on March 24, 1934. Execution having been issued on said judgment and returned unsatisfied this suit was brought against the appellee (defendant) insurance company under the authority of Act No. 196 of the Acts of the State of Arkansas of 1927 (page 667).

The appellee defended upon three grounds: (1) That the policy had been canceled at the request of the insured prior to the time the appellant's cause of action accrued on March 24, 1934; (2) that the insured, Ray Worley, in violation of the terms of the policy, failed wholly to give the company notice of appellant's claim and failed to forward to the company the summons served upon him in appellant's action; and (3) a breach of warranty in the application for the policy in reference to the territory in which the truck was to be operated.

The appellee contends that all three of these issues are for determination upon this appeal; while the appellant insists that only the first, cancellation of the policy, is before us.

At the conclusion of all the testimony, the court sustained a motion for a peremptory instruction on the sole ground "that the evidence shows the policy was cancelled prior to the time the plaintiff (appellant) was injured." Exception was taken to the ruling, a verdict was directed and a judgment was entered thereon. The appeal is from such judgment.

The question of cancellation will first be considered. It is claimed by the appellant that the evidence upon this issue is in conflict, requiring it to be submitted to the jury. The appellee maintains (1) that O. Shelley Evans, acting with at least implied authority of Worley, the insured, canceled the policy prior to the accident; (2) that Worley, by giving Evans complete charge over his insurance business and by putting him in a position

of apparent authority, is estopped to deny Evans' authority to cancel the policy; and (3) that Worley prior to the judgment against him knew that Evans had canceled the policy and, having made no attempt to repudiate his action, ratified the cancellation.

█ If uncertainty as to a cancellation of the policy exists because of a conflict of testimony, or because fair-minded men might honestly draw different conclusions from the undisputed evidence, the question of cancellation is not one of law for the court to determine on a motion for a directed verdict, but of fact to be settled by the jury. Detroit Fire & Marine Ins. Co. v. Oklahoma Terminal E. Co., 64 F. (2d) 671, 673 (C.C.A.10).

The first controverted question is as to whether O. Shelley Evans was the agent of Worley, the insured, with authority to cancel the policy of insurance. Evans was an insurance solicitor in the office of Fitch, Chadwick & Co., an insurance agency at San Antonio, Tex. Worley was a truck operator living in that city. He desired to obtain public liability and property damage as well as cargo insurance on his motortruck. His employer directed him to go to the office of Fitch, Chadwick & Co. and to see Evans. He called at their office on December 16, 1933, and interviewed Evans. Worley and Evans were strangers who had not met before. Evans was not an authorized agent for any insurance company. He was a solicitor only receiving a share of the commission on business produced by him.

The testimony of Evans and Worley as to what occurred at the interview of December 16, 1933, is in conflict in some particulars and in harmony in other respects. Evans sold Worley an accident and health policy and a policy for cargo insurance on that occasion, both of which were in companies represented by Fitch, Chadwick & Co. As to the public liability and property damage insurance, Evans testified: "Ray Worley asked me to get the insurance but he did not know in what company I was going to get it. I simply told him I would get it. * * * I told Mr. Worley that they (Fitch, Chadwick & Company) did not write this class of insurance, but that I could get it placed for him." "I explained to Ray Worley that if he had an accident he must report it at once." He testified further that he told Worley that "I told him the pol-

icy would be written by the Motor Carrier Insurance Agency in Austin (Texas), and 'that all subsequent premiums would have to be sent to them because I did not represent them."

Worley testified in reference to the same matters: "I told him (Evans) what I wanted and he sat down and wrote it out and gave me the receipt. I do not remember the exact conversation with Mr. Evans when I got this insurance, or that he said he could not write a policy as was issued by the Commercial Standard Insurance Company, that he had no authority to write that policy, but that he would act as my agent for the purpose of procuring that policy, but it was understood by me that he was their agent."

Worley at that time paid Evans $43.50 and received the following receipt:

"Received from Ray Worley Forty-three and 50/100 Dollars P. L. & P. D. 31.00—balance 8.20 for 8 months cargo 12.50 balance 6.75 for 6 months.

"12/16/33          C. O. Evans."

Evans had an arrangement with the Motor Carrier Insurance Agency of Austin, Tex., to solicit business for them for one-half the regular commission. That agency was the authorized agent of the Commercial Standard Insurance Company of Dallas, Tex., appellee, and Evans had been furnished their blank applications for use. On December 26, 1934, Evans filled out one of these blanks and signed Worley's name thereto and sent it on December 28th to the Motor Carrier Insurance Agency with his personal check, saying:

"Enclosed is my check for $27.90, which represents net on $31.00, the balance to be paid $8.20 monthly for eight months.

"Please mail the policy to me, as it is not to be filed with the Railroad Commission."

The policy was drawn by the agency, dated December 26, 1933, and returned on December 29th to Evans. There was attached to the policy a Premium Payment Agreement providing for payment of the balance of the premium in eight equal monthly installments of $8.20 each beginning January 15, 1934.

The policy was kept by Evans. Worley never saw it. He never asked for it. He said: "I didn't tell him (Evans) to keep it for me, and didn't tell him not to keep it. * * * Just left it with him." "Mr. Evans told me that the company would

hold the policy until fully paid for and then it would be delivered." Evans explained his retention of the policy as follows: "When we write insurance policies for truckmen on credit terms we retain possession of the original policies so that if subsequent payments are not made we can return the policies to the company for cancellation without the necessity of obtaining the policy back from the insured."

The policy had been in force but three days when on December 29, 1933, Worley was in an accident with his truck at Waco, Tex. He immediately informed Evans of the accident by telegram, and Evans reported it to the Motor Carrier Insurance Company on January 2, 1934. Worley then called at Evans' office and a detailed report was prepared by Evans and mailed to the agency on January 3, 1934. In his letter transmitting the report, Evans said: "I am sorry that we catch an accident under this policy so quick, but I believe if we sit tight and not do very much about it, that Worley and the International People might convince the claimant that maybe they aren't claimants at all."

It was while Worley was at Evans' office about January 3, 1934, that it is claimed he authorized Evans to cancel the policy. The truck was seriously damaged in the Waco accident, and Evans testified that he said to Worley on that occasion: "There is no sense of your keeping this policy any longer if you are not going to use your truck. Without the use of your truck you certainly cannot earn money to pay your premium. The best thing for you to do is to send it back to the Motor Carrier Agency and get it cancelled." He then adds: "And if I recall the conversation correctly that is what he agreed to do." Worley denied this conversation emphatically. He testified that it never occurred. He said: "In the conversation in which I told him (Evans) my truck was demolished and I had no money to fix it, which occurred between the 3rd and 10th of January, I told him it had to be fixed; I thought I would get it out of the Insurance Company, The National, Yes, I had a policy with them; I paid them something like forty dollars for it, in case of an accident they were to fix it up. It was payable to them and they were supposed to fix my truck up. I have that insurance policy now, it is down at home."

The truck was repaired, and Worley continued the use of it.

On January 10, 1934, Evans wrote the Motor Carrier Insurance Company saying: "Inasmuch as this insured had an accident which completely demolished his truck, I am returning the above numbered policy for cancellation. I will thank you to send me check for return premium." The agency canceled the policy under date of January 10, 1934, and returned it to the appellee. At the same time a check was sent to Evans for $17.98, the unearned amount of the premium paid by Worley on the short rate basis. Evans cashed the check and gave Worley credit for unpaid premiums on his other policies. Worley testified that he did not know that the policy had been canceled or that any money was returned to Evans. Evans made no report to him concerning the matter. The policy provided: "Cancellation: This policy may be canceled at any time by either the Assured or the Company by giving notice of such cancellation to the other party, stating when thereafter cancellation shall be effective, and the date of cancellation shall then be the end of the policy period."

It is conceded that no notice of cancellation was sent to Worley by the agency, by the appellee or by Evans.

■■ The appellee, having interposed cancellation as an affirmative defense, drew upon itself the burden of proving it. Runkle v. Citizens' Insurance Co. (C.C.) 6 F. 143, 148; Commercial Union Ins. Co. v. King, 108 Ark. 130, 156 S.W. 445, 446; Harrington v. Bremer County Farmers' Mut. Fire Ins. Ass'n, 203 Iowa, 282, 211 N.W. 383, 385; Crown Point Iron Co. v. Ætna Ins. Co., 127 N.Y. 608, 28 N.E. 653, 657, 14 L.R.A. 147. It must be kept in mind that the appellee makes no claim that the policy was ever canceled in accordance with its terms. The claim is that it was canceled by an agreement with the insured. In order to establish such a cancellation, the appellee was required to prove that there was such an agreement voluntarily entered into by the insured himself or by some one acting for him and with authority from him to make the agreement. Where one alleges the other party to the transaction acts through an agent, the burden of proof is upon him to show the act to be within the scope of the agent's authority. Baker v. North River Ins. Co., 112 Kan. 530, 212 P. 118, 119.

■ Under the circumstances thus disclosed in evidence, it must be held that the

question of express authority of Evans to cancel the policy was for the jury. If the jurors should believe the testimony of Evans and not that of Worley, they would find for the appellee upon this issue. On the other hand, if they believed Worley and not Evans, their verdict would be for appellant.

■ Appellee contends, in the second place, that the evidence shows as a matter of law that Evans possessed implied authority to effect cancellation on behalf of Worley. That Evans was the agent of Worley in procuring the policy follows from the fact Worley employed him to procure the insurance. Travelers' Ins. Co. v. Thorne, 180 F. 82, 86, 38 L.R.A.(N.S.) 626 (C.C. A.1); International Paper Co. v. General Fire Assur. Co., 263 F. 363, 364 (C.C.A. 2); Hesselberg et al. v. Ætna Life Ins. Co., 75 F.(2d) 490, 492 (C.C.A.8).

■ If the appellee is to succeed in establishing an implied authority to cancel he must show that the act was reasonably necessary to accomplish the object of the agency. An agent has no implied authority "to do acts not incidental to the transaction, nor usually done in connection therewith nor reasonably necessary." American Law Institute's Restatement of the Law of Agency, § 35, comment a. In accord with this proposition, it is generally held that the authority to procure insurance does not of itself carry with it the authority to effectuate a cancellation of the policy thus procured. General Ins. Co. of America v. Allen, 40 F.(2d) 384, 385 (C.C.A.9); Grace v. American Central Ins. Co., 109 U.S. 278, 282, 3 S.Ct. 207, 27 L.Ed. 932; City of New York Ins. Co. v. Jordan, 284 F. 420, 422 (C.C.A.5); Adams v. Manufacturers' & Builders' Fire Ins. Co. (C.C.) 17 F. 630; Snedicor v. Citizens' Ins. Co., 106 Mich. 83, 64 N.W. 35, 36; John R. Davis Lumber Co. v. Home Ins. Co., 95 Wis. 542, 70 N.W. 59, 60. Nor does the retention of the policy by one whose authority is originally restricted enlarge the scope of authority so as to include the right to cancel. Filkins v. State Assurance, 8 F.(2d) 389, 391, 393 (D.C.W.D.N.Y.); Rolens v. Keller Const. Co. (Mo.App.) 24 S.W.(2d) 1077, 1080.

Appellee contends that Evans was Worley's general agent in the matter of handling the insurance and that, therefore, it necessarily follows he had implied authority to cancel. We are of opinion that the ultimate inquiry is not whether Evans was a general or special agent, but rather was the cancellation incidental to the authority to procure the insurance? Does an agent to procure insurance usually send the policy in to be canceled? Was it necessary in order to get the truck insured to cancel the policy and leave it uninsured? There is no magic in the words "general agent." While one so designated may have more incidental powers than a "special agent," the test of determining their scope remains the same. See Agency Restatement, § 35, comment c. It could hardly be argued that the cancellation by Evans was a necessary step in accomplishing the object of the agency, viz., procuring insurance on the truck.

■ We recognize that it is well settled by the authorities that an agent to procure insurance and to keep the property insured may accept notice of cancellation. See e. g., Orkin v. Standard Fire Ins. Co. of New Jersey, 99 N.J.Law, 114, 122 A. 823, 824; Firemen's Ins. Co. v. Simmons, 180 Ark. 500, 22 S.W.(2d) 45, 46. But this rule cannot aid the appellee. The reason underlying the rule is that as the agent is to keep the property insured, notice should be given to him, rather than to the principal, in order that he may at once secure substituted insurance. Schauer v. Queen Ins. Co., 88 Wis. 561, 60 N.W. 994, 995. There may be room for argument that Evans might under such circumstances have accepted a notice of cancellation from the company. That case is not before us. Without ascertaining the exact scope of Evans' authority, it is sufficient to say that Evans never accepted a notice of cancellation from appellee as a necessary step in obtaining substituted insurance. Acceptance of a notice of cancellation from the appellee as an incident to obtaining insurance elsewhere is one thing; sending the policy in of his own accord for the purpose of stopping the insurance on the truck is another.

■ Appellee further claims in argument that the act of Worley in leaving the policy in the possession of Evans clothed Evans with apparent authority to cancel it. The appellee's agents who appeared as witnesses did not testify that they relied upon that fact in any way. But had they done so, the legal conclusion drawn by the appellee is without merit. Apparent authority arises from " * * * words or other conduct of the principal which,

reasonably interpreted causes a third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him." Agency Restatement § 27. An act not expressly or impliedly authorized does not take upon itself the quality of an apparently authorized act because the agent chooses to perform it and the third party, with whom he deals, accepts the act of the agent; the third party must use reasonable diligence in ascertaining the extent and nature of the agent's authority and reasonably conclude the act to be within it. Smith v. Starkey, 203 Wis. 56, 233 N.W. 576, 578; Paine v. Sheridan Trust & Savings Bank, 342 Ill. 342, 174 N.E. 368, 370. The appellee, charged with knowledge that authority to procure insurance implies no power to cancel, had no right to assume such authority existed from the mere fact the agent surrendered the policy to it. Filkins v. State Assurance (D.C.) 8 F.(2d) 389, 391; Rolens v. Keller Const. Co. et al. (Mo.App.) 24 S.W.(2d) 1077, 1080. Nor was there any other "course of conduct" on the part of Worley shown to justify appellee in believing that Evans had such authority. This was the first time Worley had dealt with either Evans or appellee; and the fact that Evans sent in the report of the Waco accident does not imply authority to cancel. If the question of apparent authority be approached from the viewpoint of the principal, it must appear that the principal ought to have anticipated that his own acts would mislead the third party. Davison v. Parks, 79 N.H. 262, 108 A. 288, 289; Agency Restatement § 49, comment b. Nothing appears in the evidence tending to show that Worley should have anticipated that leaving the policy in the possession of Evans would lead to any attempted cancellation between him and the appellee.

The appellee relies upon the case of Kooistra v. Rockford Ins. Co., 122 Mich. 626, 81 N.W. 568, as establishing the proposition that possession by the agent of the policy creates apparent authority to cancel. Language in the case, divorced from the facts, may appear to support that view, but when read in connection with the facts fails to do so. In the cited case a broker had procured insurance on behalf of the plaintiff, and a policy was delivered to him. The company, however, soon ordered a cancellation, whereupon the broker surrendered the policy for cancellation. A policy from the defendant's agent was then secured, the agent telling the broker that it was doubtful if his company would carry the risk. The company refused to do so, and the broker surrendered the policy to the agent for cancellation. A third policy was likewise secured and canceled. After the destruction of the property, the insured sued the defendant, alleging the lack of authority on the part of the broker to cancel. But had his position been sound, the cause of action was against the first company rather than the defendant, as no more authority existed to cancel one policy than the other. Also, as pointed out by the court, as the broker and agent understood that it was doubtful if the company would carry the risk, the defendant's agent could reasonably assume, when he later communicated with the broker and found that policy in his possession, that the policy had so remained in order that the broker might surrender it in case the company should refuse to carry the risk. The decision was correct, but it is not a precedent for the proposition that Evans had apparent authority to cancel when he took it upon himself to surrender the policy for cancellation. The instant case seems identical with the facts of Filkins v. State Assurance, supra, and Rolens v. Keller Const. Co. et al., supra, where it was held that the broker, in possession of the policy, lacked any authority to send it in for cancellation. It would be a strange and at the same time a dangerous rule to hold that the mere possession of an insurance policy gives such custodian apparent authority to cancel it and receive back from the insurer the unearned premium without notice to the insured. It would not be safe, if that were the law, for one to leave his insurance policies in the custody of the banker or lawyer who represented him in procuring them.

■ Appellee further points out that a few days after the cancellation in question it concluded that Worley was an undesirable risk and was about to cancel on its own accord, but refrained from doing so when it discovered the action already taken. This cannot raise an estoppel against Worley. Having failed to exercise due diligence in ascertaining Evans' authority, appellee assumed that a valid cancellation had taken place and desisted from further action. No legal significance can be attached to

"what it would have done" but for its own negligence.

In addition to the claim that Evans, in the exercise of either actual or apparent authority, canceled the policy for Worley on January 10, 1934, the appellee makes the further claim that Worley ratified the unauthorized cancellation in April. The claim is that he then discovered that Evans had canceled the policy and that his failure to repudiate the conduct of Evans amounts to ratification by acquiescence. If there were such ratification, its retroactive effect relates back to January 10, a date prior to March 24, when appellant was injured. The intervening rights of third persons cannot be thus defeated. Cook v. Tullis, 85 U.S. (18 Wall.) 332, 338, 21 L.Ed. 933; Union Pac. Co. v. Reed, 80 F. 234, 236 (C. C.A.8); National Foundry & Pipe Works v. Oconto Water Co., 68 F. 1006, 1009 (D. C.E.D.Wis.); People v. Board of Education, 217 N.Y. 470, 112 N.E. 167, 169; Graham v. Williams, 114 Ga. 716, 719, 40 S.E. 790. If a right under the policy of insurance did accrue to Spann before April, which Worley could not destroy by an attempted cancellation on his part, it follows that his acquiescence at that time could have no greater effect.

Where an injured person has a right to sue an insurer conditioned upon an unsatisfied judgment against the insured, the obtaining of the judgment and the unsuccessful efforts to collect it are conditions precedent to his cause of action against the insurer for the purpose of setting in motion the statute of limitations. Royal Indemnity Co. v. Watson, 61 F. (2d) 614, 615 (C.C.A.5); see, also, Bass v. Standard Acc. Ins. Co., 70 F.(2d) 86, 87 (C.C.A.4). The rights of the injured party arise, however, immediately upon the happening of the accident. Edwards v. Fidelity & Casualty Co. of New York, 11 La.App. 176, 123 So. 162, 163. This right, arising from contract, cannot be destroyed by an attempted subsequent cancellation, release, or compromise by the insured and insurer. Zimmerman v. Union Automobile Ins. Co., 133 Or. 600, 291 P. 495, 498; Finkelberg v. Continental Casualty Co., 126 Wash. 543, 219 P. 12, 14; Rushing v. Commercial Casualty Ins. Co., 251 N.Y. 302, 167 N.E. 450, 451. A contrary rule allowing the insured and insurer to destroy the claim of the injured would render the right of little value.

Therefore, had Evans, in April sought to cancel the policy, Spann's right under the policy would have been unimpaired. It is also true that Worley's assent by acquiescence to a previous unauthorized cancellation, is of equal insignificance.

There remains for consideration the contention of the appellee (1) that the insured, Ray Worley, in violation of the terms of the policy, failed wholly to give the company notice of appellant's claim and to forward to the company the summons served upon him in appellant's action, and (2) that there was a breach of warranty in the application for the policy in reference to the territory in which the truck was to be operated. The appellant claims that these issues are not before us because they were not raised in the motion for a directed verdict.

These issues were tendered in the answer, but they were not referred to in the motion for a directed verdict. Under such circumstances, we are constrained to hold that they should not be considered on appeal. It was held by the Supreme Court in Peck v. Heurich, 167 U.S. 624, 629, 17 S.Ct. 927, 42 L.Ed. 302, that "A judgment cannot be affirmed on a ground not taken at the trial, unless it is made clear beyond doubt that this could not prejudice the rights of the plaintiff in error."

And it was said by Judge Gardner in Falvey v. Coats (C.C.A.) 47 F.(2d) 856, 857, 89 A.L.R. 1: "Where a motion for a directed verdict, failing to state the grounds upon which it is based, is denied, it is unfair to the trial court and to the appellate court; but, where it is granted, it is unfair to the party against whom it is granted."

In the same case Judge Gardner points out that it is due to opposing counsel to point out the grounds of the motion specifically "so that they might have an opportunity, either intelligently to oppose the motion, or ask to reopen the case for the introduction of further testimony, or for leave to amend the pleadings, or to move for a nonsuit." See, also, Mansfield Hardwood Lumber Co. v. Horton, 32 F.(2d) 851, 852 (C.C.A.8); Wharton v. Ætna Life Ins. Co., 48 F.(2d) 37, 40 (C.C.A.8); Massachusetts Bonding & Ins. Co. v. R. E. Parson Elec. Co., 61 F.(2d) 264, 267, 92 A.L.R. 218 (C.C.A.8); Standard Acc. Ins. Co. v. Rossi, 52 F.(2d) 547, 548 (C. C.A.8); Washburn v. Douthit, 73 F.(2d)

23, 24 (C.C.A.8); H. F. Wilcox Oil & Gas Co. v. Skidmore, 72 F.(2d) 748, 752 (C.C.A.8).

It is true that a judgment may be affirmed upon a ground other than that which influenced the trial court. A just judgment which is warranted by the record and the facts will not be overthrown because it was based on the wrong reason. Baker v. Kaiser, 126 F. 317, 319 (C.C.A.8). But it must be made clear beyond doubt by a bill of exceptions, which contains all the evidence, that the record would not sustain any other verdict. Bank of Havelock v. Western Union Telegraph Co., 141 F. 522, 527, 4 L.R.A.(N.S.) 181, 5 Ann.Cas. 515 (C.C.A.8). It is evident in the instant case that the bill of exceptions does not contain all the evidence. The trial judge certified only that the record contains "all the evidence material to the issues presented by the assignment of errors"; and the assignment of errors and the argument of counsel for the appellant are directed to the motion for a directed verdict and the ruling thereon. Moreover, an inspection of the bill of exceptions discloses that the testimony is set out in narrative form and that there are many omissions. Not even the insurance policy in question is set out in full. It would manifestly, therefore, be unfair for this court to undertake to decide these issues not passed upon by the trial court and not called to the attention of counsel for the appellant at the proper time.

The judgment appealed from is therefore reversed, and the case is remanded to the trial court, with directions to grant a new trial.